**Reversed and Rendered and Opinion filed January 23, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01056-CV

### COLLEGE OF THE MAINLAND, Appellant

### V.

### DOUGLAS MENEKE, Appellee

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10-CV-2232**

## O P I N I O N

College of the Mainland appeals from an order denying its plea to the jurisdiction seeking dismissal of a retaliatory discharge suit filed under Chapter 554 of the Texas Government Code by former employee Douglas Meneke. We reverse the trial court's order and render judgment that this suit must be dismissed because Meneke's claim is barred by governmental immunity and the trial court therefore lacks subject matter jurisdiction.

BACKGROUND

Meneke began working as the college's director of Enterprise Resource Planning in October 2007. He has a bachelor's degree in computer science; before joining the college, he spent 11 years working in information technology positions at other educational institutions.

Meneke reported to David Divine, the college's Chief Information Security Officer and Associate Vice President of Information Technology Services. Divine designated Meneke as the college's Information Security Officer in December 2008; in this capacity, Meneke reviewed the college's information security practices.

Meneke's review led him to conclude that Marnie Schutz, the college's Director of IT Applications for Financial Services, had inappropriate programming access to the college's computer system. He reported his conclusion to Divine and to auditors from the Texas Higher Education Coordinating Board. Meneke also reported a belief that the college's count of nursing students was inflated. Based on Meneke's information, the auditors made a preliminary finding that Schutz should not have the level of computer access that she had been allowed.

The college responded at length in writing to the auditors' preliminary finding; among other things, the college contended that Schutz's level of computer access (1) was appropriate and necessary for her job duties; and (2) had been specifically approved by the college's president and board of trustees. The auditors subsequently withdrew the preliminary finding. In a final audit report issued on April 7, 2010, the auditors concluded that the college was complying with all Coordinating Board requirements and was accurately collecting and reporting enrollment data. The audit report stated: "Internal controls are sufficient to ensure that financial aid and enrollment data are accurately collected and reported." It continued: "However, the College should formalize a Security

2

Standards Policy for protecting information assets in accordance with TAC 202.70."

The college terminated Meneke's employment on July 12, 2010. According to the college, it fired Meneke based on what it characterizes as a long and documented history of

> (1) unsatisfactory performance; (2) insubordination, including, but not limited to, failure to carry out directives and requirements of your supervisor, failure to follow policies and procedures of the College District, or repeated neglect of duties; (3) violation of the College District's code of ethics, core values, and standards of conduct; (4) violation of the College District policy, state law or federal law; and (5) good cause as recommended by the College President.

According to Meneke, the college fired him in retaliation for reporting violations of the law to the auditors.

Meneke sued the college in state court on August 9, 2010, asserting a claim for retaliatory discharge under the Texas Whistleblower Act. The college filed a plea to the jurisdiction seeking dismissal of Meneke's suit on September 7, 2010, which the trial court denied in an order signed on November 2, 2012. The college timely appealed from this order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2013).

ANALYSIS

## A.    Governmental Immunity

The college is a statutorily created public junior college and a political subdivision of the state. *See* Tex. Educ. Code Ann. § 130.174 (Vernon 2002); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (Vernon Supp. 2013); *see also Lone Star College Sys. v. Immigration Reform Coalition of Tex. (IRCOT)*, No. 14-12-

3

00819-CV, 2013 WL 6174483, at *3 n.7 (Tex. App.—Houston [14th Dist.] Nov. 26, 2013, pet. filed).

As a political subdivision of the state, the college is immune from suit absent an express legislative waiver of immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). "Sovereign immunity protects the State from lawsuits for money damages." *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 853 (Tex. 2002). "Political subdivisions of the state, including cities, are entitled to such immunity – referred to as governmental immunity – unless it has been waived." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). Immunity from suit focuses on whether the state has expressly consented to suit; when immunity exists, it deprives a trial court of subject matter jurisdiction. *Id*.; *see also Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A plea to the jurisdiction is an appropriate vehicle for asserting immunity from suit. *Lueck*, 290 S.W.3d at 880 (citing *Miranda*, 133 S.W.3d at 225-26). The determination regarding the existence of subject matter jurisdiction is treated as a question of law. *See IT-Davy*, 74 S.W.3d at 855. We review *de novo* whether the plaintiff has set forth facts affirmatively demonstrating the existence of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. "Where a plea to the jurisdiction challenges the existence of jurisdictional facts, as is the case here, the court considers the relevant evidence submitted by the parties to resolve the jurisdictional issues." *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 185 (Tex. App.—Dallas 2012, pet. denied) (citing *Miranda*, 133 S.W.3d at 227). "If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the court may rule on the plea to the jurisdiction as a matter of law." *Id*. (citing *Miranda*, 133 S.W.3d at 227).

4

The college contends that Meneke's suit is foreclosed by governmental immunity, and that the trial court erred by denying its plea to the jurisdiction.[1]

**B.     Elements of a Whistleblower Claim**

Meneke invokes the Texas Whistleblower Act as the express legislative waiver of immunity from suit that allows him to sue the college. *See* Tex. Gov't Code Ann. § 554.0035 (Vernon 2012). Under this statute, "A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter." *Id*. "Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." *Id*.

Section 554.002(a) sets forth the standard for a "violation of this chapter." Tex. Gov't Code Ann. § 554.002(a) (Vernon 2012).

Under section 554.002(a), "A state or local governmental entity may not suspend or terminate the employment of . . . a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." *Id*.

As defined in the statute, a "law" is "a state or federal statute," or "an ordinance of a local governmental entity," or "a rule adopted under a statute or ordinance." *Id*. at § 554.001(1)(A), (B), (C) (Vernon 2012).

To make a good faith report of a violation, (1) the employee must believe that the reported conduct violated the law; and (2) that belief must be reasonable in light of the employee's training and experience. *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 783-84 (Tex. 1996).

---

[1] The college also argues that Meneke's state court suit is barred by res judicata based on a federal lawsuit that he filed on April 9, 2010, which was dismissed with prejudice on July 30, 2010. We do not consider this contention in an interlocutory appeal from the denial of a plea to the jurisdiction. *See City of Houston v. Johnson*, 353 S.W.3d 499, 506 n.2 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

The supreme court has determined that a waiver of immunity from suit requires the plaintiff to "actually allege a violation of the Act." *Lueck*, 290 S.W.3d at 881. "Therefore, the elements under section 554.002(a) must be considered in order to ascertain what constitutes a violation, and whether the violation has actually been alleged." *Id*. "We conclude that the elements of section 554.002(a) can be considered as jurisdictional facts, when it is necessary to resolve whether a plaintiff has alleged a violation under the Act." *Id*.

Resolution of this appeal turns on whether the conduct of which Meneke complained amounts to a violation of law as required under section 554.002(a).[2] "There is no requirement that an employee identify a specific law when making a report." *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied). "But there must be some law prohibiting the complained-of conduct to give rise to a whistleblower claim." *Id*.; *see also Mullins*, 357 S.W.3d at 188; *Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi 2001, pet denied). "And the 'law' must be a state or federal statute, an ordinance, or a rule adopted under a statute or ordinance." *Mullins*, 357 S.W.3d at 188 (citing Tex. Gov't Code Ann. § 554.001(1)). "Other complaints and grievances, including alleged violations of an agency's internal procedures and policies, will not support a claim." *Id*.

The college asserted in its plea to the jurisdiction that the conduct of which Meneke complained is not prohibited by law. Therefore, Meneke was required to respond by "identifying what law or laws he believed were violated by the conduct described in his report . . . ." *Id*. at 189.

According to Meneke's brief, the complained-of conduct focuses on

---

[2] In light of our resolution, we do not address whether Meneke reported the asserted violations to an appropriate law enforcement authority. We focus our analysis on a threshold determination with respect to whether the conduct of which Meneke complains amounts to a violation of the law.

"inappropriate access" to the college's computer system by certain college employees; "access" to the computer system by college employees "without an appropriate audit trail in place;" and "data being changed inappropriately" by a college employee. He contends that this conduct amounts to "falsification of data" and impermissibly "altering and redacting governmental records" within the college's computer system. Meneke alleges in his first amended petition that the following specific instances of impermissible conduct occurred.

- Schutz had been given improper computer access "and was making unauthorized changes" to the college's computer data.

- Instead of following Meneke's approved process, Schutz used an unapproved computer "deregistration process" of her own design to record information about students who were dropped from classes for non-payment of fees.

- "[T]he entire Payroll Department had wide-open access to the HR system."

- "In January 2010, Plaintiff was requested by the Institutional Research Director for the College (Katherine Friedrich) to modify/correct nursing data to match spreadsheet(s) from an unknown source."

- Meneke warned the college that "the data was bad and the college student count was inflated . . . ."

Meneke references the same instances in his response to the college's plea to the jurisdiction.

Meneke asserts on appeal that he "identified himself as a whistleblower because he reported violations of College policy and the Texas Administrative Code." Meneke also asserts that he "reported the violation of the College's policies to an appropriate law enforcement authority . . . ."

7

As a threshold matter, we reject Meneke's attempt to predicate a valid whistleblower claim on asserted "violations of College policy" with respect to computer use by college employees. Meneke has provided no basis upon which we can conclude that unspecified policies to which he refers in his brief were adopted under a statute. Under these circumstances, reliance on internal administrative policies cannot serve as the basis for a viable whistleblower claim. *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 854-55 (Tex. 2013) (per curiam). The supreme court has stated: "[W]e have noted that a constable department's internal policies are not 'law' as that term is defined under the Whistleblower Act." *Id.* at 854 (citing *Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex. 1996)).

Meneke contends in his brief that the complained-of conduct amounts to "falsification of data" and "altering and redacting governmental records" in violation of the Texas Penal Code. *See* Tex. Penal Code Ann. § 37.10 (Vernon Supp. 2013).

Meneke's brief points to specific provisions in section 37.10 stating that an offense is committed by a person who "knowingly makes a false entry in, or false alteration of, a governmental record;" or "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record;" or "intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;" or "makes, presents, or uses a governmental record with knowledge of its falsity." *Id.* § 37.10(a)(1), (2), (3), (5). The common thread running through each provision identified by Meneke is the requirement of knowing, intentional conduct.[3]

---

[3] Meneke's appellate brief also refers broadly in a footnote to the "Texas Administrative Code, Title 1, Part 10, Chapter 202" as one of "a number of penal laws and administrative codes that govern inappropriate access to governmental records . . . ." The same footnote refers

The requisite knowing and intentional illegal conduct is absent here. During his deposition, Meneke was asked: "[Y]ou don't know if Marnie [Schutz] simply made an error or she – if she was intentionally trying to defraud the state." Meneke answered: "That is correct. I do not know." Meneke stated, "I am not accusing anybody of anything" in response to a question asking: "Are you accusing Ms. Schutz of purposefully falsifying documents?" Meneke also answered, "I don't know" in response to a question asking: "Is it your opinion that Ms. Schutz purposefully falsified documents?" Meneke further testified that he did not know how errors in the college's reporting of nursing student enrollment occurred; he believed this circumstance arose due to a coding error. The auditors concluded that the college "complied with all relevant Coordinating Board rules and regulations for reporting class hours and students . . . ."

Meneke's brief does not address this evidence. He points instead to deposition testimony from David Divine. According to Meneke's brief, Divine admitted during his deposition that "if one enters the computer system of the College and without appropriate security changes records, then such activity could

globally to (1) the "federal Family Educational Rights and Privacy Act (commonly known as FERPA);" (2) "Texas Penal Code, Chapter 33: Computer Crimes;" (3) "Texas Penal Code, § 37.10;" and (4) "United States Code, Title 18, Chapter 47, § 1030: Fraud and Related Activity in Connection with Computers." Meneke argues elsewhere in his brief that the conduct of which he complains violated specific provisions of section 37.10 of the Texas Penal Code. He does not attempt to argue in his brief that this conduct violates any specific standard set forth in any other statute or regulation referenced in his sweeping footnote. *Cf. Mata v. Harris Cnty.*, No. 14-11-00446-CV, 2012 WL 2312707 (Tex. App.—Houston [14th Dist.] June 19, 2012, no pet.) (mem. op.) (addressing standards under 18 U.S.C. § 1030(a)(2)(C) in connection with allegations that non-employee improperly was allowed to "hack" into county computer network and obtain information about routers and passwords without the knowledge or consent of the director of the "Harris County Infrastructure Technology office"). Because Meneke makes no argument on appeal specifically in relation to these other statutes and regulations, we do not address them further; we focus our analysis instead on subsections (a)(1), (2), (3), and (5) of section 37.10. *See* Tex. R. App. P. 38.1(i), 38.9(b). We express no opinion about whether asserted regulatory violations referenced by Meneke are a "violation of law" for purposes of a claim under the Texas Whistleblower Act. *See Lueck*, 290 S.W.3d at 855.

be a crime."

The exchange from Divine's deposition reads as follows.

Q.    If I go into the computer system for a college and without authorization – well, excuse me – I go into a computer system for a college and I change data without security clearance, is that a crime?

*                    *                    *

A.    Without –

Q.    Security clearance.

A.    – clearance from the CIO or the information security officer, yes.

Schutz did in fact obtain "security clearance" for the computer access she had. According to Lisa Templer, Vice President for College and Financial Services, the college made "[a] conscious institutional decision" to grant Schutz broad computer access and have her report to Templer in financial services instead of "the IT department." The college did so to take advantage of Schutz's "accounting CPA certification and her strong IT skills;" to allow her to focus on "financial related system issues;" and to avoid the "risk that competing IT needs would cause a drift from our goals for this employee." Accordingly, a position was created for Schutz as Director of IT Applications for Financial Services. The college's president recommended Schutz's appointment to this position with job duties encompassing computer access, and the board of trustees unanimously approved her appointment.

At most, Meneke has identified issues related to internal administrative disagreements and turf battles between two departments in the college. There is no issue of fact with respect to whether the conduct of which he complains is prohibited by section 37.10. The record and Meneke's contentions provide no

basis for a conclusion that the targeted conduct amounted to intentional or knowing falsification of data in violation of section 37.10, or that Meneke could have formed a reasonable belief that it did.

Having failed to demonstrate that section 37.10 prohibits the complained-of conduct, Meneke cannot establish the necessary waiver of governmental immunity that will allow his case to proceed under the Texas Whistleblower Act. *See McElyea*, 239 S.W.3d at 850; *see also Mullins*, 357 S.W.3d at 188-89; *Llanes*, 64 S.W.3d at 642.

## CONCLUSION

We reverse the trial court's order denying the college's plea to the jurisdiction, and render judgment that Meneke's suit be dismissed due to the absence of subject matter jurisdiction. In light of this disposition, we do not reach the other issues raised on appeal.


/s/     William J. Boyce
        Justice



Panel consists of Justices Boyce, Jamison and Busby.