**Reversed and Remanded and Opinion filed March 20, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01119-CV

**THE CITY OF SOUTH HOUSTON, Appellant**

**V.**

**SANDRA RODRIGUEZ, Appellee**

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-59812**

## O P I N I O N

Sandra Rodriguez filed suit against the City of South Houston under the Texas Whistleblower Act, alleging retaliatory discharge for her reporting of allegedly illegal conduct. South Houston now brings this interlocutory appeal from the trial court's denial of its plea to the jurisdiction based on governmental immunity. We reverse the trial court's order and remand with instructions to dismiss Rodriguez's claims against South Houston for lack of subject matter

jurisdiction.

## I. Governing Law

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *See Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004).[1] A plaintiff has the burden of affirmatively demonstrating the trial court's jurisdiction. *Heckman v. Williamson Cnty*, 369 S.W.3d 137, 150 (Tex. 2012). We review de novo whether the plaintiff has sustained her burden. *See City of Houston v. Williams*, 353 S.W.3d 128, 133–34 (Tex. 2011). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman*, 369 S.W.3d at 150. In assessing the pleadings in this context, we construe them liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Miranda*, 133 S.W.3d at 226-27. We also may consider evidence submitted to negate the existence of jurisdiction, and we must consider such evidence when necessary to resolve the jurisdictional issues. *Heckman*, 369 S.W.3d at 150; *see also Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (confining the evidentiary review to evidence that is relevant to the jurisdictional issue). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Miranda*, 133 S.W.3d at 228. The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a

---

[1] Absent a waiver of governmental immunity, a governmental entity cannot be sued and a trial court does not have subject matter jurisdiction over an action against the entity. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). It is undisputed that the City of South Houston is a political subdivision of the State and, as such, is entitled to governmental immunity unless it has been waived.

matter of law. *Id.*; *Univ. of Tex. M.D. Anderson Ctr. v. King*, 417 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2013).

The Whistleblower Act contains two jurisdictional requirements before its limited waiver of governmental immunity takes effect: the plaintiff must be a public employee and allege a violation of the Act. Tex. Gov't Code § 554.0035; *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009).[2] In order to allege a violation of the Act, the plaintiff must allege that an adverse employment action was taken against her because she *in good faith reported a violation of law* by the employer or another public employee to an appropriate law enforcement authority. Tex. Gov't Code § 554.002(a). As defined in the Act, a "law" is "a state or federal statute," or "an ordinance of a local governmental entity," or "a rule adopted under a statute or ordinance." *Id.* at § 554.001(1); *College of the Mainland v. Meneke*, No. 14-12-01056-CV, 2014 WL 257882, at *3 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, no pet. h.). To make a good faith report of a violation, the employee must believe that the reported conduct violated the law and that belief must be reasonable in light of the employee's training and experience. *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 783–84 (Tex. 1996); *Meneke*, 2014 WL 257882, at *3. We conclude that it was not reasonable for Rodriguez to believe the conduct she reported violated the law, in light of her training and experience.[3]

### *The Alleged Violations*

We begin by examining Rodriguez's allegations in her pleadings. In her First Amended Petition, Rodriguez alleged that she worked in South Houston as

---

[2] Is it undisputed that Rodriguez was a public employee at all times relevant to this case.

[3] In its plea and on appeal, South Houston contends that Rodriguez has not properly alleged, or the evidence conclusively negates, that she (1) in good faith reported a violation, (2) in good faith believed the authority or authorities to whom she reported were appropriate law enforcement authorities, or (3) was discharged due to her having reported a violation.

chief municipal court clerk, supervising three other clerks (including Clerk A and Clerk B[4]). The city secretary was Rodriguez's direct supervisor.

Further according to Rodriguez's pleading, on June 30, 2011, Clerk A told Rodriguez that a customer had approached the clerk's service window and "asked to have the status checked on multiple tickets he had pending[, saying] he had done some work for the Mayor and wanted to make sure his tickets had been taken care [of] and were dismissed." Clerk A retrieved the computerized ticket records, which showed all of the tickets had been dismissed. At that point, Clerk B interrupted and told the customer she would help him. On July 1, Rodriguez investigated Clerk A's report by checking the tickets in the court's database. She determined that Clerk B was the last person to have worked on the tickets, but the paper tickets had not been filed properly. When Rodriguez went to Clerk B's desk to look for the tickets, Rodriguez discovered two bundles that contained improperly processed tickets. One bundle contained several older tickets for which the cited defendant failed to appear on his or her scheduled court date but, contrary to court procedures, no warrants had been issued. These tickets were significantly older than tickets for other defendants that Clerk B more recently had processed for warrants. Because the tickets were not properly filed, others were prevented from processing the issuance of warrants. The second bundle Rodriguez discovered contained tickets that either lacked proper documentation or "appeared to have been pulled to remove them from the usual court process." Furthermore, some had been dismissed in the court's computer system even though they lacked the proper signatures or documentation.

On July 5, 2011, Rodriguez spoke with a South Houston councilmember,

---

[4] The names of other persons are not necessary to the disposition of this case; therefore, we use descriptive titles instead.

4

telling him of her concerns that "ticket fixing" had occurred. She told the councilmember that she brought her concerns to him rather than the mayor because at least one of the issues she was concerned about involved the mayor. Rodriguez further told the councilmember that some of the tickets of interest had been dismissed on Monday, May 16, 2011, the first business day after the mayor's reelection. Although the tickets reflected they were dismissed by South Houston's prosecutor, the prosecutor only came to the municipal court on Thursdays. Moreover, these tickets had been stamped with the signature of the municipal judge, but Rodriguez herself was the only one authorized to use his stamp, and she was not at work on May 16. At the councilmember's request, Rodriguez also met with two other members of the city council.

On July 7, Rodriguez met with the judge, the prosecutor, and the city secretary, and during the course of the meeting, they reviewed the tickets Rodriguez had pulled. The prosecutor stated that he decided what cases were to be dismissed and agreed with the judge that discrepancies in the electronic records were irrelevant. When Rodriguez showed them specific tickets having no written indication the judge or prosecutor had agreed to a dismissal, the prosecutor suggested they may have been dismissed as part of a group of tickets. According to Rodriguez, however, the prosecutor had no explanation as to why a clerk would dismiss a ticket in the system without something in writing to show who had approved the dismissal. At some point, the councilmember joined the meeting, stating that he just wanted to observe. The judge then accused Rodriguez of changing her story after the councilmember arrived and claimed to have been recording the meeting on an iPhone, although he refused to play the recording. The prosecutor acknowledged that tickets should not be held on a clerk's desk and that the electronic database should be updated to reflect the proper dates of

5

dismissal. The city secretary also stated she would question Clerk B about the matter.

## Jurisdictional Evidence

Attached to its plea to the jurisdiction, South Houston provided excerpts from Rodriguez's deposition as well as signed declarations by the prosecutor, the city secretary, the mayor, and Clerk A, as well as other items.[5] Attached to her response, Rodriguez included additional excerpts from her deposition as well as a transcript of a hearing before the Texas Workforce Commission.

In his declaration, the prosecutor explained that he had the discretionary authority to dismiss tickets. He said that he usually signs and dates the tickets but that the dates do not always match what is put in the database. If a ticket is listed as dismissed in the system but not signed by the prosecutor or a judge, then the ticket is not in fact dismissed. The prosecutor said that Rodriguez was well aware of this, as they had discussed ticket processing procedures often, and Rodriguez herself was not processing them properly. He stated that he performed court business on every day of the week, so the fact a ticket showed it was dismissed on a day other than a Thursday was not indicative of an impropriety. Indeed, the prosecutor said that none of the tickets he analyzed with Rodriguez during their meeting showed any sign of impropriety. He was not surprised some tickets lacked his notation because it was not rare for tickets to be lost in the shuffle at the court. He further noted that the judge could authorize anyone to use his stamp, not just Rodriguez, and that the judge himself could use the stamp, so the fact the stamp was used on a day when Rodriguez was not in the office did not indicate improper dismissals occurred. According to the prosecutor, no reasonable clerk with Rodriguez's experience would have believed that ticket fixing was occurring

---

[5] *See* Tex. Civ. Prac. & Rem Code § 132.001 (authorizing use of unsworn declarations).

simply because of discrepancies between the database and the paper records.

In his declaration, the mayor stated that he had no authority to dismiss tickets and had never requested one be dismissed. The city secretary confirmed several statements made by the prosecutor and the mayor, including that the prosecutor reported Rodriguez was not processing tickets properly and the mayor indicated there were problems with paperwork errors. The city secretary further corroborated that, during the meeting, the prosecutor explained why each ticket Rodriguez presented showed no evidence of impropriety.

Two declarations were filed from Clerk A, an original and an amendment that purportedly changed only one "typographical error." In the original, Clerk A stated that "based on what Ms. Rodriguez informed me about the tickets, I can say it *was reasonable* for Ms. Rodriguez to have believed a violation of law occurred." (Emphasis added). In the amended declaration, this sentence is changed to say "it was *not* reasonable for Ms. Rodriguez to have believed a violation of law occurred." (Emphasis added). That this change was merely to correct a typographical error appears certain because otherwise the statement conflicts with the spirit of the very next sentence, "[t]he Prosecutor has complete discretion to dismiss tickets and most of the tickets contained his signature," as well as the substance of statements appearing later in the declaration:

> No reasonable Court Clerk with Ms. Rodriguez's experience would have immediately jumped to the conclusion that improper conduct occurred without reviewing all the facts first. No clerk in our office would have seen anything unusual with these tickets, mistakes in our office happened all the time. Specifically, based on what Ms. Rodriguez alleges, no one in our office would like to believe ticket fixing would occur.

Clerk A further explained that at the time of Rodriguez's report, the municipal court office was disorganized, mistakes were being made all the time,

7

and Clerk B's bundles of tickets were consistent with the state of affairs at the office. Clerk A acknowledged that the customer told her that he had done "some work for the Mayor and was told his ticket would be taken care of."

In the excerpts from Rodriguez's deposition, when she was asked why she thought that ticket fixing was occurring, she mentioned the customer's asking whether he still owed for his tickets after having done work for the mayor. She further stated that although the prosecutor said he had dismissed the tickets and there was no ticket fixing occurring, she did not agree with him because one of the tickets had been dismissed in the system but had no indication of dismissal written on the paper ticket itself. She acknowledged that the prosecutor explained the ticket could have just gotten lost, but she further complained that she could not tell why Clerk B had set the two bundles of tickets aside. She agreed that discrepancies happen at the court, and she defined "ticket fixing" as when a ticket is dismissed by someone without authority to do so. All told, she said she discovered about 14 tickets with issues.

In the Workforce Commission hearing, the judge stated that the prosecutor had explained the tickets during the July meeting and that the explanation for the discrepancies appeared facially evident on the tickets. The judge called it a "commonplace" issue. He stated that if there was a problem with processing tickets, it needed to be investigated and corrected. He said that Rodriguez did not mention the mayor in the meeting until the councilmember entered the room. The judge then accused her of lying and changing her story but not of being "a liar."[6]

---

[6] The hearing officer for the Commission initially awarded Rodriguez unemployment benefits, but upon appeal by South Houston, the Commission subsequently ruled that she was disqualified from receiving such benefits. Rodriguez thereafter filed suit against South Houston for alleged violations of the Whistleblower Act as well as against the Commission, seeking judicial review of its disqualification determination.

## Report of Violations

We turn first in our analysis to the Whistleblower Act's requirement that Rodriguez must have in good faith reported a violation of law by her employer or another public employee. *See* Tex. Gov't Code § 554.002(a); *Lueck*, 290 S.W.3d at 881.[7] As stated, the requirement of "good faith" means that Rodriguez must have believed she was reporting conduct that constituted a violation of law and her belief must have been reasonable based on her training and experience. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010). The first, or subjective, element embodies the concept of "honesty in fact" and ensures an employee seeking a remedy under the Act must have believed she was reporting an actual violation of the law. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002); *City of Houston v. Cotton*, 171 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The second, or objective, element ensures that even if the reporting employee honestly believed the reported conduct was a violation of law, she receives protection under the Act only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law. *Needham*, 82 S.W.3d at 320; *Cotton*, 171 S.W.3d at 547. The objective reasonableness of an employee's belief must be viewed in light of her training and experience. *Cotton*, 171 S.W.3d at 547.

To maintain an action under the Act, an employee need not prove an actual violation of law, but there must be some law prohibiting the conduct of which the employee complains. *Meneke*, 2014 WL 257882, at \*3; *Cotton*, 171 S.W.3d at 547 n.10; *see also City of Elsa*, 325 S.W.3d at 627 n.3 (explaining that an actual violation of law is not required); *Gray v. City of Galveston*, No. 14–12–00183–CV,

---

[7] In its first issue, South Houston alleges Rodriguez did not make a good faith report of a violation of law as required under section 554.002(a).

2013 WL 2247386, at *3 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.) (mem. op.) (stating an incorrect report may be considered in good faith if a reasonable person with employee's same level of training and experience would have believed a violation occurred).

Rodriguez alleges that she reported a violation of law in good faith when she reported information suggesting the mayor may have been involved in having tickets dismissed in exchange for work done for him, i.e., "ticket fixing." We begin our analysis by noting that in her live petition in the trial court and her response to the plea to the jurisdiction, Rodriguez did not cite any particular law that she believed had been violated by Mayor Soto or any employee of South Houston. In her deposition testimony and on appeal, she mentions only article 32.02 of the Texas Code of Criminal Procedure, which states in full:

### Dismissal by state's attorney

> The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge.

Tex. Code. Crim. Proc. Art. 32.02. Rodriguez, however, fails to explain how this article applies, much less renders illegal any action she alleges the mayor or any employee undertook. The article neither has any obvious application to dismissal of a local traffic ticket nor renders any particular action illegal; it merely sets forth the procedures by which a State prosecutor may dismiss a criminal prosecution. *See id.*; *see also Smith v. State*, 70 S.W.3d 848, 850-51 (Tex. Crim. App. 2002) (discussing dismissals under article 32.02); *Cotton*, 171 S.W.3d at 549-50 (noting Whistleblower Act plaintiff failed to explain how alleged actions violated cited statute).

10

More importantly to our disposition, Rodriguez fails to allege or present evidence of sufficient facts to affirmatively demonstrate a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law. As Rodriguez acknowledges, her allegations against the mayor rest on the statements Clerk A reported hearing from the customer, asking whether his tickets had been dismissed because he had done some work for the mayor. Rodriguez's purported assumption from this hearsay report—that the mayor was involved in ticket fixing—was not a reasonable one. As several witnesses stated in their declarations and Rodriguez acknowledged in her deposition, the prosecutor explained in their meeting the dismissal of the customer's tickets. Without more, this hearsay statement by a person with no known connection to the mayor and only a brief and ambiguous explanation regarding why he thought his tickets were going to be dismissed did not provide a reasonable basis for a good faith belief any laws had been violated. *See City of Elsa*, 325 S.W.3d at 625 (holding plaintiff's general, conclusory statements regarding mayor did not report a violation of law by the mayor); *Cotton*, 171 S.W.3d at 548 (discounting "second-level hearsay" as providing reasonable basis for good faith belief a violation of law had occurred).

Rodriguez further alleges and testified, however, that hearing about the customer's statement led her to investigate. Rodriguez contends that she found bundles of older tickets and determined that some were not properly processed. Numerous witnesses, however, including Rodriguez herself, the city secretary, the prosecutor, and Clerk A, indicated that the state of the municipal court office at the time was disorganized and that it was not uncommon for processing mistakes to be made. The prosecutor additionally stated that none of the tickets Rodriguez pointed out showed any evidence of any improprieties.

11

All told, Rodriguez estimated that only fourteen tickets had been improperly processed. She offers no evidence regarding why a reasonable chief clerk with her training and experience would have believed ticket fixing was occurring based on fourteen tickets having been improperly processed in an office with the problems faced by the South Houston municipal court office. *Cf. Cotton*, 171 S.W.3d at 548-49 (holding plaintiff presented no evidence to establish why reasonably prudent employee with her experience would have believed illegal conduct had occurred).[8] In contrast, both the prosecutor and Clerk A stated unequivocally that no reasonable clerk with Rodriguez's experience would have concluded on the evidence she presented that illegal conduct had occurred. Clerk A in particular suggested Rodriguez had "jumped" to conclusions without considering all of the facts; indeed, Rodriguez did not even ask Clerk B about the allegedly suspicious tickets before making her report of alleged violations.

Rodriguez has failed to raise a fact question that she made a good faith report of a violation of law by her employer or another public employee. *See* Tex. Gov't Code § 554.002(a); *see also Elsa*, 325 S.W.3d at 628 (dismissing cause for lack of subject matter jurisdiction where plaintiff's pleadings and evidence did not demonstrate he reported a violation of law); *Lueck*, 290 S.W.3d at 881 (discussing jurisdictional requirements associated with section 554.002(a)), 885-86 (dismissing where pleadings affirmatively demonstrated plaintiff did not allege a violation of the Act). Accordingly, we sustain South Houston's first issue and need not address its remaining issues.

---

[8] Although in *Cotton* we considered a no-evidence challenge in an appeal from a final trial and judgment, the analysis therein is useful in the jurisdictional context for understanding what types of allegations and evidence are required to present a Whistleblower Act claim. 171 S.W.3d 541. *See generally Lueck*, 290 S.W.3d at 884 (explaining that "the 554.002(a) elements are jurisdictional when necessary to ascertain whether plaintiff has adequately alleged a violation of the chapter").

We reverse the trial court's order and remand with instructions to dismiss Rodriguez's claims against South Houston for lack of subject matter jurisdiction.[9]


/s/    Martha Hill Jamison
Justice


Panel consists of Justices Boyce, Jamison, and Donovan.

---

[9] It is unclear whether Rodriguez's appeal from the Commission's decision is still an ongoing part of this lawsuit in the court below. In this appeal, we are not called upon to address any matters related to that proceeding.