**Dissenting opinion issued March 14, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00026-CV

————————————

**MICHAEL BARNETT, Appellant**

**V.**

**CITY OF SOUTHSIDE PLACE, Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-69569**

---

## DISSENTING OPINION

Michael Barnett appeals from the trial court's order granting the City's plea to the jurisdiction in his suit brought under the Texas Whistleblower Act. Barnett contends that the trial court erred in granting the City's plea because the

jurisdictional evidence raises a fact issue regarding whether he suffered an adverse employment action because of his report of the City's alleged violation of law.

This case construes Texas Government Code section 554.002(a), part of the Texas Whistleblower Act (the "Whistleblower Act"), governing a state employee's remedies for retaliation by an employer for an employee's good faith report of a violation of law by the employer or another public employee. *See* TEX. GOV'T CODE ANN. § 554.001–.010 (West 2012). I believe the majority's construction of the statute is clearly erroneous in ignoring the persuasive authority of federal law approved by the Texas state courts in construing and applying state employment and discrimination and retaliation statutes. Consequently, the majority's rulings and holding are contrary to established law.

The majority first holds that the Texas Whistleblower Act does not apply in this case because appellant Michael Barnett resigned his employment with appellee, the City of Southside Place (the "City"), rather than being fired. However, this conclusion ignores federal and state precedent applying the "constructive discharge" standard to retaliation claims under the Whistleblower Act. I would hold that Barnett raised a jurisdictional fact issue as to whether he was constructively discharged by the City before his resignation, stating a claim under the Whistleblower Act and precluding dismissal on the City's plea to the jurisdiction.

The majority also holds that the Whistleblower Act does not provide a remedy for a former employee whose state employer took an adverse action against him after his employment was terminated. This holding is contrary to Texas Supreme Court controlling precedent construing the retaliation provision in the Whistleblower Act in light of federal precedent interpreting the federal employment anti-discrimination act, Title VII, 42 U.S.C.A. §§ 2000e-1 *et seq.*[1] And it is contrary to both United States Supreme Court and Fifth Circuit precedent (cited by Barnett) holding that the remedies for retaliation under the analogous federal statute, Title VII, *do* apply to acts of retaliation taken by employers against former employees.

Critically, the majority's opinion and holdings lead to absurd consequences, as they allow state employers to avoid the consequences of the Whistleblower Act simply by delaying acts of retaliation against a whistleblower until after he has resigned under pressure from the employer or has been fired. The opinion thereby encourages delayed acts of retaliation and undermines the purpose of the Whistleblower Act—which is to prevent acts of retaliation against whistleblowers, not to encourage them. This cannot be a correct interpretation of Texas law.

Because I believe that this case construing the Whistleblower Act is important to the jurisprudence of Texas, and because I believe the majority clearly errs, I respectfully dissent. I would hold that the Whistleblower Act *does* apply to adverse

---

[1] *Montgomery County v. Park*, 246 S.W.3d 610 (Tex. 2007).

3

actions taken by public employers against whistleblowing employees to force them to resign and to acts of retaliation taken by public employers against former employees after their discharge. I would reverse the trial court's order dismissing this suit and would remand the case for discovery and trial.

## Background

The facts are briefly restated below for clarity.

Barnett, a detective for the City from approximately March 2013 to September 2014, reported to his supervisor, Stephen McCarty, the City's Chief of Police, that he had become aware that the City had implemented an illegal ticket quota practice with its officers.

On August 15, 2014, Chief McCarty prepared a written memorandum to the Texas Rangers summarizing a list of his grievances against David Moss, the City Manager, including the alleged ticket quota requirement. The next day, August 16, 2014, Chief McCarty sent an email to Glenn Patterson, the City Mayor, attaching the memorandum he had drafted. On August 18, 2014, Barnett and Chief McCarty met with Texas Ranger Jeff Owls, reported the City's alleged ticket quota practice, and gave him Chief McCarty's August 15 memorandum.

The next day, August 19, 2014, Barnett submitted a letter of resignation to Moss and Chief McCarty with an effective date of September 3, 2014.

4

On August 31, 2014, Moss sent an "Inquiry Memo" to department officers requiring them to answer questions regarding allegations of misconduct by Chief McCarty. In their answers, two officers alleged that Barnett had encouraged them to leave the City's employment more than once between August 20 and August 30, 2014.

In an Inquiry Memo dated September 2, 2014, Moss informed Barnett that he was conducting an internal investigation into the officers' allegations regarding Barnett's alleged misconduct and directed him to answer the written questions and provide the documentation sought in the memo. The memo stated that the allegations, if true, constituted insubordination which would warrant Barnett's involuntary separation from the City's employment. Barnet refused to answer the questions and informed Moss that he was resigning his position with the City, effective immediately.

That same day, September 2, 2014, Moss prepared a Notice of Termination letter stating that Barnett's employment with the City was terminated for insubordination based on (1) his refusal to comply with Moss's instructions related to the City's internal investigation into his conduct and (2) his suggestion to two other officers that they resign their employment with the City. On October 23, 2014, the City submitted a Texas Commission on Law Enforcement ("TCOLE") "Separation of Licensee (F-5)" form reflecting that Barnett had been "dishonorably

5

discharged." In an accompanying letter to TCOLE, the City stated that the F-5 form was intended to amend a previous F-5 form completed by Barnett, and that Barnett had also completed F-5 documents for two other officers.

On November 26, 2014, Barnett filed suit against the City alleging that he had suffered adverse employment actions in retaliation for reporting a violation of law by the City to Chief McCarty and the Texas Rangers.

On November 9, 2015, the City filed its plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction over Barnett's whistleblower claim because (1) the City did not take any adverse personnel action against him; (2) even if it had, there was no evidence that the adverse employment action was because of his report of the City's alleged violation of law; and (3) even if the City knew of his report before his separation from employment, it had a legitimate basis to terminate his employment based on his insubordination. The trial court granted the City's plea and dismissed Barnett's whistleblower claim with prejudice. I would reverse and remand.

## Texas Whistleblower Act

### A. Statutory Provisions

The Whistleblower Act, Government Code section 554.002(a), provides, "A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith

6

reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). The Act further provides that "[a] public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter." *Id.* § 554.0035. The Act contains two jurisdictional requirements before the waiver of governmental immunity takes effect: the plaintiff (1) must be a public employee and (2) must allege a violation of the Act. *See State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009); *City of S. Houston v. Rodriguez*, 425 S.W.3d 629, 631 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). To allege a violation of the Act, the plaintiff must allege that an adverse employment action was taken against him because he in good faith reported a violation of law by the employer or another public employee to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a); *Rodriguez*, 425 S.W.3d at 631. To make a good faith report of a violation of law, "the employee must believe that the reported conduct violated the law and that belief must be reasonable in light of the employee's training and experience." *Rodriguez*, 425 S.W.3d at 631. The elements of section 554.002(a) can be considered to determine both jurisdiction and liability. *Lueck*, 290 S.W.3d at 883.

**B. Analysis**

The City does not dispute that Barnett is a public employee, that he made a good faith report that his employer or another public employee violated the law, or that he made the report to an appropriate law enforcement authority. However, it disputes Barnett's claim that he raised a fact issue in the trial court as to (1) whether he suffered an adverse employment action (2) because he reported a violation of law, precluding dismissal of this claims on the City's plea to the jurisdiction.

Barnett asserts that he suffered adverse employment actions when the City (1) terminated his employment; (2) drafted a Notice of Termination letter and placed it in his file; (3) submitted an F-5 form to TCOLE reflecting that he was dishonorably discharged; and (4) falsely accused him of submitting F-5 forms to TCOLE. In support of his argument that his employment was terminated, Barnett relies on City Manager Moss's deposition testimony that he fired Barnett, the City's Notice of Termination letter, and the City's letter to TCOLE regarding the amended F-5 form that stated that the City terminated Barnett's employment on September 2, 2014. Barnett argues that this evidence demonstrates that the City intended to, and believed it had, fired him.

The majority holds that Barnett failed to state a claim under for retaliatory discharge by the City because he voluntarily resigned and was not terminated by the City, as required by the Whistleblower Act, and because retaliatory actions taken

8

against him by the City after his resignation were not within the scope of the Act. It concludes, therefore, that he has failed to state a claim under the Act and that his case was properly dismissed. The majority claims that Barnett has pointed to no applicable authority on point. I disagree, and I would hold the opposite. The first concern, therefore, must be to determine the law governing these issues.

### 1. Applicable Law

Contrary to the majority—who find Barnett's authority to be applicable only to federal law and irrelevant to Texas law—I would hold, on the authority of Texas Supreme Court precedent established in *Montgomery County v. Park*, that federal law construing the anti-retaliation provision of Title VII of the federal Civil Rights Act is persuasive authority in construing the anti-retaliation provision of the Texas Whistleblower Act because the statutes serve "similar purposes." 246 S.W.3d 610, 614 (Tex. 2007).[2] And I would follow the Texas Supreme Court in applying the

---

[2] Because one of the policies behind the adoption of the TCHRA was to further federal anti-discrimination policies embodied in Title VII of the Civil Rights Act of 1964 and Title I of the ADA and its amendments, the Texas courts have similarly followed federal precedent in construing Texas anti-discrimination statutes, including the Texas Commission on Human Right Act (TCHRA) set out in the Texas Labor Code at Chapter 21. *See Hagood v. Cnty. of El Paso*, 408 S.W.3d 515, 522–23 (Tex. App.—El Paso 2013, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 756–57 (Tex. App.—Fort Worth 2006, pet. denied); *see also Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100 (Tex. 2004) ("One purpose of chapter 21 of the Texas Labor Code is to further the policies of Title I of the [ADA]. Accordingly, in construing an applying chapter 21, we are guided by federal law.").

federal standard with "appropriate modifications" in construing and applying the Whistleblower Act. *See id.*

In 2006, in *Burlington Northern & Santa Fe Railway Co. v. White*, the United States Supreme Court discussed the purpose of the anti-retaliation provision of Title VII and explicitly distinguished it from those other anti-discrimination provisions that apply to "actions that affect employment or alter workplace conditions." 548 U.S. 53, 54, 126 S. Ct. 2405, 2407 (2006). The Court pointed out that "[t]he anti-retaliation provision seeks to secure [the Act's primary objective] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," whereas to prevent a workplace where employees are discriminated against solely because of their status, "Congress did not need to prohibit anything other than employment-related discrimination." *Id.* at 63, 126 S. Ct. at 2412. The Court explained that merely prohibiting employment-related discrimination would achieve the purpose of preventing discrimination in the workplace, but it would not achieve the second objective of preventing retaliation because it "would not deter the many forms that effective retaliation can take," and thus it would not fully achieve the anti-retaliation provision's purpose of "'[m]aintaining unfettered access to statutory remedial mechanisms.'" *Id.* at 64, 126 S. Ct. at 2412 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 848 (1997)).

10

The Court held that, instead of covering discriminatory actions in the workplace, the anti-retaliation provision covers any employer actions that would have been "materially adverse" to a reasonable employee or applicant; thus, "a [retaliation] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68, 126 S. Ct. at 2415 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The Court pointed out that the "primary purpose" of the anti-retaliation provision is to maintain "unfettered access to statutory remedial mechanisms" by prohibiting employer actions that are likely to deter discrimination victims from complaining to the EEOC, the courts, and employers. *Id.* at 64, 126 S. Ct. at 2412. It stated that it used reasonable employee's reactions because the provision's standard for judging harm must be objective, and thus judicially administrable. *Id.* at 67–68, 126 S. Ct. at 2415.

The year after the *Burlington* decision, in a case of first impression, the Texas Supreme Court addressed the issue of the scope and application of the Whistleblower Act in *Park*. It stated, "The anti-retaliation provision of Title VII and the Whistleblower Act serve similar purposes, and we think it is appropriate to require plaintiffs to show objective material harm under both. We therefore adopt the *Burlington* standard with appropriate modifications." 246 S.W.3d at 614. The

11

supreme court held that "a personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Id.* It explained, "This objective test strikes an appropriate balance between the need to shield whistleblowers (and thereby encourage the reporting of governmental lawbreaking) and the need to protect government employers from baseless suits, and, in addition, provides lower courts with a judicially manageable standard." *Id.* When there are no disputed issues of fact—as here and as in *Park*—the court held that the reviewing court must determine whether the employment act taken was adverse under the standard established in *Burlington*, taking as true all evidence favorable to the non-movant and indulging every reasonable inference and resolving any doubts in his favor. *Id.*

Thus, the first question to be resolved is whether, under the applicable federal and state law, Barnett voluntarily resigned, thereby acting outside the scope of the anti-retaliation provision of the Whistleblower Act—so that acts taken against him by the City could not be considered unlawful retaliation—or was constructively or actually terminated by the City—so that his claim falls within the scope of the Whistleblower Act and can be properly brought in a Texas state court. And the second question is whether, under that same law, the Texas Whistleblower Act applies to acts of retaliation taken by an employer against a former employee, such as those adverse actions taken against Barnett by the City after his termination. I

12

would hold, pursuant to both Texas Supreme Court authority and federal authority governing unlawful acts of retaliation by an employer against a whistleblower, that Barnett stated a claim against the City on both grounds and that the City's plea to the jurisdiction was improperly granted

2.   *Constructive and Actual Discharge by Employer Under the Texas Whistleblower Act*

The majority concludes that "Barnett's assertion that his employment was terminated is belied by his own sworn testimony that he voluntarily resigned *before* he received the termination letter," for which it cites Barnett's own deposition testimony. Slip Op. at 8. It observes, "Although the termination letter might otherwise qualify as an adverse employment action under a different set of facts, it does not here because there is undisputed evidence that Barnett had already resigned his employment with the City." Slip Op. at 9. The majority's argument and conclusion are, however, conclusory, unsupported, and dismissive of both federal and state law construing constructive discharge in the case of employer retaliation against a whistleblower.

Constructive discharge is a fundamental principle of employment discrimination claims, including retaliation claims, in both public and private workplaces and under both federal and state law. Specifically, the binding precedent of this Court holds that "constructive discharge is a 'termination' under the Whistleblower Act." *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d

13

767, 774 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.); *see also Pa. State Police v. Suders*, 542 U.S. 129, 143, 124 S. Ct. 2342, 2352 (2004) (holding that "Title VII encompasses employer liability for a constructive discharge"); *Microsoft Corp. v. Mercieca*, 502 S.W.3d 291, 312 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that concept of constructive discharge permits employee who has quit to demonstrate required adverse employment action necessary for statutory retaliation claim under Texas Commission on Human Rights Act ("TCHRA")).

Constructive discharge occurs when "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Suders*, 542 U.S. at 141, 124 S. Ct. at 2351. "Whether a reasonable employee would feel compelled to resign depends on the facts of each case," but factors bearing on this determination include: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offers were accepted or not." *Gardner v. Abbott*, 414 S.W.3d 369, 383 (Tex. App.—Austin 2013, no pet.). "In addition, evidence that an employee was forced to choose between resigning or

14

being fired may be sufficient to raise a fact issue regarding constructive discharge."

*Id.*

On August 19, 2014, Barnett resigned effective September 3, 2014—because, he testified, "I didn't trust Mr. Moss anymore. The way he was dealing with the Police Chief made me think that I didn't want to work for that agency anymore and gave me the impression they were going to get me next." However, before the effective date of his resignation, the City initiated an inquiry against him arising out of its investigation of Chief McCarty, required him to fill out a questionnaire regarding allegations of his insubordination, told him his actions, if true, would warrant separation from City employment, sent him a Notice of Termination letter, and actually terminated his employment, according to City Manager Moss's own testimony, on September 2, 2014.

These actions by the City support a conclusion that Barnett did not voluntarily resign but was constructively discharged. Therefore, it cannot be the case, as the majority holds, that the Whistleblower Act does not apply to Barnett because he resigned, and Barnett's claim cannot properly be dismissed on a plea to the jurisdiction for failure to state a claim under the Whistleblower Act on this basis.

### 3. *Retaliation Against Former Employees*

The majority also holds that the Whistleblower Act does not apply to this case because the retaliatory actions taken against Barnett by the City occurred after he

15

resigned his employment on August 19. It points out that Barnett argued that his whistleblower claim was supported by "the City's submission of an F-5 form to TCOLE reflecting that Barnett was dishonorably discharged, and the City's statement in its accompanying letter to TCOLE that Barnett had completed his own F-5 form as well as F-5 forms for two other officers, [both of which] constitute adverse employment actions." Slip Op. at 9–10. However, it opines, "These complained-of actions occurred nearly two months *after* Barnett resigned his employment with the City." Slip Op. at 10. It acknowledges that "[s]ection 554.002(a) prohibits suspension or termination of the employment of, or other adverse personnel action against," a protected claimant, but it argues that "[s]ection 554.001(3) defines a 'personnel action' as 'an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation.'" Slip Op. at 12 (citing TEX. GOV'T CODE ANN. §§ 554.002(a), 554.001(3)). It concludes, "The Act thus prohibits adverse personnel actions that affect the benefits flowing from an *ongoing* employment relationship." Slip Op. at 12 (emphasis added).

The majority dismisses as inapplicable to this case Barnett's citation to the Fifth Circuit's unpublished opinion in *Allen v. Radio One of Texas II, LLC*, 515 F. App'x 295 (5th Cir. 2013). Slip Op. at 10. The majority states, "Barnett argues that '[t]he Supreme Court has long allowed claims for retaliation by former employees

16

against former employers for post-employment adverse employment actions.'" Slip Op. at 10–11 (quoting *Allen*, 515 F. App'x at 302 (citing *Robinson*, 519 U.S. at 346, 117 S. Ct. at 848)). The majority reasons that *Robinson*, which the *Allen* court cites, "construed the term 'employees,' as used in section 704(a) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, as amended)[3]—*a statute not at issue here*— to include former employees bringing suit for post-employment actions," and it noted that "such an interpretation was consistent with the broader context of Title VII and the primary purpose of section 704(a)." Slip Op. at 10 (citing *Robinson*, 519 U.S. at 346, 117 S. Ct. at 848) (emphasis added). The majority concludes that Barnett does not fall within the Whistleblower Act's definition of "public employee" and holds that "Barnett has failed to raise a fact issue regarding whether he was suspended, terminated, or suffered some other adverse personnel action because he reported a violation of law." Slip Op. at 13.

But the majority's out-of-hand dismissal of *Allen* and *Robinson* is contrary to Texas law relying on federal law as authoritative precedent. In this regard, *Robinson* is particularly important.

---

[3]     Section 704(a) makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have either availed themselves of Title VII's protections or assisted others in doing so. *See* 78 Stat. 257 (42 U.S.C. §2000e–3(a), amended).

*Robinson* was a retaliatory discrimination case brought under 42 U.S.C. § 2000e—3(a) and construing Title VII section 704(a). And it is directly contrary to the majority's holding. In that case, decided prior to *Burlington* (and relied upon by the United States Supreme Court in *Burlington* it in determining the scope of the federal anti-retaliation provision, just as *Park* relied upon *Burlington* for that purpose), the Supreme Court held that former employees were included within section 704(a)'s coverage. *Robinson*, 519 U.S. at 346, 117 S. Ct. at 849. The Court observed that "several sections of the statute plainly contemplate that former employees will make use of Title VII's remedial mechanisms," including section 703(a), prohibiting discriminatory "discharge." *Id.* at 345, 117 S. Ct. at 848. It reasoned that section 704(a) "expressly protects employees from retaliation for filing a 'charge' under Title VII, and a charge under § 703(a) alleging unlawful discharge would necessarily be brought by a former employee." *Id.* Thus, the Court found it "far more consistent to include former employees within the scope of 'employees' protected by § 704(a)," and it observed that "exclusion of former employees from the protection of § 704(a) would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC," and it "would provide a perverse incentive for employers to fire employees who might bring Title VII claims." *Id.* at 345–46, 117 S. Ct. at 848.

18

Nevertheless, as throughout its opinion, the majority simply makes a conclusory argument of its own for its holding; and it dismisses out-of-hand not only Barnett's authorities but controlling authority from the Texas Supreme Court and other authority from our sister appellate courts holding that the Whistleblower Act and similar Texas employment discrimination statutes implement on the state level the purposes of the employment discrimination and retaliation provisions of Title VII; and, thus, the Whistleblower Act, like similar anti-discrimination state statutes, is to be construed in light of federal authority. The majority disregards both United States Supreme Court authority, specifically including *Robinson*, and state court authority applying the concept of constructive discharge in the retaliation context and United States and Fifth Circuit Court of Appeals authority holding that Title VII *does* apply to acts of retaliation by employers against former employees. There is literally no legal support for the majority's holding other than its own *sui generis* reasoning, and that reasoning is contrary to the reasoning of all other authorities on point

Mindful of the admonition of the Texas Supreme Court in *Park* that the Whistleblower Act and the anti-retaliation provisions of Title VII serve similar purposes and its adoption of the *Burlington* standard of proof in construing the Whistleblower Act, I would adopt the construction of the scope and standard of proof of violations of the Texas Whistleblower Act for retaliation cases established in

19

Park, together with the reasoning of *Park*, *Burlington*, and *Robinson*, and I would apply that scope and standard of proof to the undisputed facts of this case.

Taking as true all evidence favorable to Barnett, indulging every reasonable inference and resolving any doubts in his favor, I would hold that Barnett has stated a claim against the City for retaliation under the Texas Whistleblower Act, section 554.002(a) of the Texas Government Code. I would, therefore, deny the City's plea to the jurisdiction. And, in the trial on the merits, I would determine whether Barnett was constructively discharged and whether the City violated the anti-retaliation provision of the Whistleblower Act by taking a materially adverse action against Barnett either as an employee or as a former employee under the standard established in *Burlington*. *See Park*, 246 S.W.3d at 614; *see also Burlington*, 548 U.S. at 68, 126 S. Ct. at 2415 (finding challenged action adverse when it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'" (quoting *Rochon*, 438 F.3d at 1219)).

## Conclusion

I would reverse the trial court's order granting the City's plea to the jurisdiction and dismissing Barnett's claims under the Whistleblower Act for want of jurisdiction, and I would remand the case to the trial court for further proceedings consistent with this opinion.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Lloyd.

Justice Keyes, dissenting.