

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00083-CV

_____

UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT TYLER, Appellant

V.

KHURRAM NAWAB, Appellee

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2015-680-CCL2

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

After being warned that his progress in medical knowledge and patient care was not satisfactory, Khurram Nawab, a first-year resident in the University of Texas Health Science Center at Tyler's (Texas Health's) Internal Medicine Residency Program, was notified that his contract would not be renewed for a second year. After his contract ended, Nawab, who is of Pakistani descent, filed a charge of discrimination with the appropriate state and federal agencies alleging that Texas Health had discriminated against him based on his race, color, and national origin and that he had suffered retaliation by Texas Health. Subsequently, Nawab filed this lawsuit against Texas Health asserting causes of action under the Texas Commission on Human Rights Act (TCHRA) for retaliation,[1] hostile work environment, and discrimination based on his race, religion, and national origin[2] and for intentional infliction of emotional distress.[3]

Sixteen months after the suit was filed, Texas Health filed a plea to the jurisdiction, which the trial court granted in part, dismissing Nawab's claims for religious discrimination, intentional infliction of emotional distress, and punitive damages.[4] However, the trial court denied the plea as to Nawab's other claims under the TCHRA. In this interlocutory appeal,[5] Texas Health

---

[1]*See* TEX. LAB. CODE ANN. § 21.055 (West 2015).

[2]*See* TEX. LAB. CODE ANN. § 21.051 (West 2015).

[3]In his original petition, Nawab also named Good Shepherd Health System, Inc. (Good Shepherd), as a defendant. Nawab subsequently dismissed his claims against Good Shepherd.

[4]Nawab has not appealed the dismissal of these claims.

[5]The University of Texas is a state agency. *See Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976). Therefore, we have jurisdiction to consider a denial of a plea to the jurisdiction by interlocutory appeal. TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8), 101.001(3)(A) (West Supp. 2016).

challenges the trial court's denial of its plea to the jurisdiction on Nawab's remaining TCHRA claims. We will reverse the trial court's judgment.

## I.       Background

The undisputed evidence shows that Nawab was admitted into Texas Health's Internal Medicine Residency Program (the Program) on July 1, 2012, as a PGY-1[6] resident. On October 3, 2012, Nawab was placed on academic remediation by the Program's director, Dr. Emmanuel Elueze. In a meeting on November 29, 2012, Elueze advised Nawab of ongoing concerns with his progress in medical knowledge and patient care, of concerns that he was not prepared for rounds, of his tardiness, and of his lack of advancement from his previous floor rotation. Nawab was also advised that based on his performance at that point, he would not be advancing to second year. Nawab and Elueze signed a written summary of the November 29 meeting.

At a subsequent meeting on February 6, 2013, Elueze and others met with Nawab to follow up with his remediation and to inform him of a recommendation from the Clinical Competency Committee, which met on January 31. A summary of that meeting, signed by Elueze and Nawab, states, in relevant part,

> Dr. Nawab has significant deficits in the core clinical competencies of Medical knowledge, Patient Care and Professionalism. Based on Dr. Nawab's current performance, his contract will not be renewed at the end of this academic year. This is also being communicated to him, so that he can begin making other plans as appropriate for him.
>
> . . . .

---

[6]The designation PGY-1 was not defined by the parties, so its exact meaning is unknown. However, because both parties use this abbreviation to identify Nawab's employment position, we will also refer to Nawab's position in this manner.

The program will review Dr. Nawab's performance, including if he will get full, marginal or no credit for the academic year at April clinical competency committee meeting.

Dr. Elueze informed Dr. Nawab that in the next couple of months, the program will need to see drastic improvement, not minimal improvement.

In a letter dated April 26, 2013, Elueze informed Nawab, in relevant part, as follows:

[The Program's] Clinical Competency Committee met on April 25, 2013, to review and discuss the second quarter multisource evaluations.

Following is an account of your report, and any necessary action to be taken with your mentor or program administration:

**Performance:**  *Remediation*
**Action:**        *Non-renewal of contract*

Apparently, sometime after the non-renewal of his contract, Nawab requested a review of the non-renewal by the Graduate Medical Education Committee of Texas Health. By letter dated July 17, 2013, Dr. Jonathan MacClements, the Director of Medical Education, informed Nawab that the committee had determined that Nawab was provided with appropriate guidance, opportunity to remediate, and notice of non-renewal in accordance with the Program's handbook. On September 19, 2013, Nawab filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division (CRD) and the Equal Employment Opportunity Commission, alleging that Texas Health had discriminated against him based on his race, color, and national origin and that it had retaliated against him after he complained of harassment, ethnically offensive comments, and mimicking of his accent. After receiving a notice of right to file a civil action from the CRD, Nawab filed this lawsuit on April 15, 2015.

4

In his petition, Nawab made general allegations that he "suffered instances of discrimination on the basis of his Pakistani race . . . and national origin," that "[t]he core faculty members and employees" of Texas Health "made offensive and derogatory comments during the time that he was employed there," and that after he "complained about the way he was being treated . . . [he] faced . . . numerous false allegation regarding his competency." He also alleged that as a result of his complaints, he was discharged as a medical resident and that "[h]is termination, the retaliation[,] and the harassment were all on the basis of his race, religion[,] and national origin." Nawab's petition only recites two factual examples supporting those allegations.

In the first example, Nawab alleges that "[o]n one occasion" Dr. Vazza-Zeid criticized him after he performed a pap smear and "repeated the statements [Nawab] made with the patient mocking his accent." His second example states:

> During Plaintiff[']s nephrology rotation with Dr. Vij, Dr. V. Reddy, Dr. Shakamuri[,] and Dr. McDonald, Plaintiff experienced discrimination. Dr. Vij, Dr. V. Reddy and Dr. Shakamuri were Hindu/Indian. Dr. V. Reddy asked where Plaintiff was from and if he ate "Halal." Dr. Shakamuri told Plaintiff a story about how the city of Hyderabad, India[,] was occupied by the Muslims and the Hindu army came and kicked them out. Dr. Vij stated that Plaintiffs medical knowledge was very weak and told the other three attendees to fail Plaintiff[,] and they did.

The petition then asserts causes of action under the TCHRA for retaliation, hostile work environment, and termination based on his race, religion, and national origin.

Sixteen months after filing its original answer, Texas Health filed its plea to the jurisdiction challenging whether Nawab's pleadings affirmatively showed the trial court's jurisdiction and denying the existence of facts that would give the trial court jurisdiction. Attached to the plea to the jurisdiction were the affidavits of Elueze and MacClements, the summaries of the November

5

29 and February 6 meetings, and a July 17 letter from MacClements. In addition to asserting that Nawab had failed to exhaust his administrative remedies, Texas Health asserted that Nawab had failed to plead a cause of action under the TCHRA and challenged the existence of facts that would show that Nawab had a cause of action under the TCHRA.

Nawab responded to the plea to the jurisdiction and attached his own affidavit and the April 26 letter from Elueze. In his affidavit, Nawab repeated the factual allegations made in his original petition, adding that two doctors of Indian descent were critical of him while they supported the Indian residents, but otherwise did not allege any new facts that could be described as discrimination based on race or national origin.[7] After a hearing, the trial court granted Texas

---

[7]The relevant portions of Nawab's affidavit state:

"My name is Khurram Nawab. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am of Pakistani descent. While working for University of Texas Health Science Center at Tyler, I was subject to adverse treatment because of my race, and religion. There was a strong contempt for me because of my Pakistani descent amongst the Indian doctors who made up a core group of the program I was involved in. The Indian doctors largely did my training and provided much of the information that led to my removal from the program.

Dr. Rajiv Vij who is of Indian descent, was overcritical and went out of his way to fail me. Dr. Rajiv Vij supported the Indian residents. Dr. Venkatesh Reddy who is of Indian descent, would ask me where I was from while on rotation and would ask me if I ate "Halal." Dr. Venkatesh Reddy supported Indian residents while criticizing me. Dr. Shobha Shakamuri who is of Indian descent, told me a story about an Indian city that was occupied by Muslims, and the Indian army had to be called in to remove the Muslims from the city. Dr. Shoba Shakamuri supported Indian residents and criticized me.

Dr. Rekha Reddy, the wife of Dr. Venkatesh Reddy and of Indian descent, gave negative reviews after I had worked for her and her husband. Dr. Rekha Reddy could not justify her negative reviews and would often make unfounded excuses for the poor reviews that were not factually supported.

Dr. Sushama Brimmer, who was of Indian descent, was negative toward me the first time I worked with her. She would yell at me and humiliate me in front of hospital employees. Her comments throughout rotation were laced with contempt, disrespect, and ridicule. She often cut off my sentences to ridicule me. Dr. Sushama Brimmer also made an allegation in an evaluation that I would lie when working on rotation, but when asked about it she could not provide specific facts about the lie. All of these incidents show that there is organized discrimination of me because of my Pakistani descent by doctors of Indian descent. Dr. Brenda Vozza-Zeid mocked my Pakistani accent during rounds.

6

Health's plea to the jurisdiction as to Nawab's claims for religious discrimination, intentional infliction of emotional distress, and punitive damages, but denied the plea as to his other claims under the TCHRA.

On appeal, Texas Health asserts that the trial court erred in denying its plea to the jurisdiction as to Nawab's race and national origin discrimination, hostile work environment, and retaliation claims. It argues, as it did in its plea to the jurisdiction, (1) that Nawab failed to exhaust his administrative remedies by failing to file his charge of discrimination within 180 days of the alleged discriminatory act as to all of his claims; (2) that Nawab failed to exhaust his administrative remedies as to his retaliation and hostile work environment claims by failing to include them in his charge of discrimination; and (3) that Nawab failed to plead, and was unable to establish, a prima facie case as to any of his TCHRA claims.

## II.     Standard of Review

"Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review." *Fannin Cty. Cmty. Supervision & Corrections Dep't v. Spoon*, No. 06-13-00103-CV, 2014 WL 3513388, at *4 (Tex. App.—Texarkana July 16, 2014, pet. denied) (mem. op.) (citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). Subject-matter jurisdiction may be properly challenged by a plea to the jurisdiction. *See id.*; *In re K.M.T.*, 415 S.W.3d 573, 575 (Tex.

When I wrote a long complaint against the core faculty member, Dr. Brenda Vozza-Zeid, I was given a letter stating that my performance possible nonrenewal of contract in February. At this time, I considered it a warning. It wasn't until I received a letter from the program on Good Shepherd letterhead dated April 26, 2013, similar in appearance as letters I have read before, that stated my contract would not be renewed.

7

App.—Texarkana 2013, no pet.). A plea to the jurisdiction may challenge whether the plaintiff's pleadings affirmatively allege facts showing the court's jurisdiction, and may also challenge the existence of jurisdictional facts to support the pleadings. *Mission Consol. Indep. Sch. Dist. v. Garcia (Garcia II)*, 372 S.W.3d 629, 635 (Tex. 2012).

The plaintiff has the initial burden to demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Spoon*, 2014 WL 3513388, at *5. The pleadings are construed liberally in favor of the plaintiff, looking to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226; *Spoon*, 2014 WL 3513388, at *5. "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial courts (sic) jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226–27 (citing *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). Conversely, "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* (citing *Brown*, 80 S.W.3d at 555).

Where the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider the evidence submitted by the parties to resolve the dispute, "even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.'" *Garcia II*, 372 S.W.3d at 635 (quoting *Miranda*, 133 S.W.3d at 226). As the Texas Supreme Court stated in *Garcia II*,

> In those situations, a trial court's review of a plea to the jurisdiction mirrors that of
> a traditional summary judgment motion. Initially, the defendant carries the burden

to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue. If a fact issue exists, the trial court should deny the plea. But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law.

*Id.* (citations omitted). On review, we take as true all evidence favorable to the non-movant, indulging reasonable inferences and resolving all doubts in favor of the non-movant. *Spoon*, 2014 WL 3513388, at *5 (citing *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009)).

A suit against a governmental employer impacts the doctrine of sovereign immunity, which may be asserted in a plea to the jurisdiction. *Garcia II*, 372 S.W.3d at 635–36 (citing *Miranda*, 133 S.W.3d at 225–26). Unless the state consents to suit, sovereign immunity will deprive the trial court of jurisdiction against the state and certain other governmental units. *Id.* at 636 (citing *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009)). The Texas Supreme Court has held that the TCHRA has waived governmental immunity for suits brought under it, but only in those instances in which "the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Id.* (citing *Mission Consol. Indep. Sch. Dist. v. Garcia (Garcia I)*, 253 S.W.3d 653, 660 (Tex. 2008); *Lueck*, 290 S.W.3d at 881–82).

In order to overcome the governmental employer's sovereign immunity and invoke the jurisdiction of the trial court, the plaintiff must first plead the elements of his statutory cause of action, i.e., the basic facts that make up his prima facie case under the TCHRA. *Id.* at 637. If the defendant presents evidence in its plea to the jurisdiction negating one of those basic facts, then the plaintiff must submit some evidence to at least raise a fact issue as to that fact. *See id.*; *Miranda*, 133 S.W.3d at 228. If the plaintiff fails to do so, then the trial court should grant the plea to the

9

jurisdiction. *Id.* at 643. Since Texas Health's plea to the jurisdiction challenged both Nawab's pleadings and the existence of facts that would establish the trial court's jurisdiction over his TCHRA claims, Nawab was required both to plead a prima facie case and to produce evidence to at least raise a fact issue as to any element negated by Texas Health in its plea to the jurisdiction.

## III. Application

### A. Race and National Origin

The TCHRA provides that "[a]n employer commits an unlawful employment practice" if it fails to hire, discharges, or "discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of an individual's "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051(1); *Mesquite Indep. Sch. Dist. v. Mendoza*, 441 S.W.3d 340, 343 (Tex. App.—Dallas 2013, no pet.). In his original petition, Nawab alleged that he was terminated because of his race and national origin.[8]

To establish a prima facie case of employment discrimination based on race and national origin, Nawab was required to plead and produce evidence (1) that he was a member of a class protected by the TCHRA, (2) that he was qualified for his employment position, (3) that his contract was not renewed, and (4) that he was replaced by someone outside his protected class. *See Garcia II*, 372 S.W.3d at 642; *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Mendoza*, 441 S.W.3d at 343. Initially, we note that in his original pleading, Nawab did

---

[8]We note that the undisputed evidence shows that the employment action Nawab complains about is the non-renewal of his contract. However, Texas Health does not contest that the non-renewal of Nawab's position is not actionable under the TCHRA. Accordingly, we will consider the sufficiency of Nawab's claims under the TCHRA even though it is technically a claim based on the non-renewal of his employment position rather than a termination.

10

not allege any facts showing that he was qualified for his employment position or that he was replaced by someone outside his protected class. Therefore, the trial court erred in not granting the plea to the jurisdiction and affording Nawab an opportunity to amend his pleadings. *See Miranda*, 133 S.W.3d at 226–27.

However, in addition to challenging Nawab's pleadings, Texas Health challenged the existence of jurisdictional facts, and produced evidence showing that Nawab was not qualified for his position. In this case, Nawab was not terminated from his contract as a first-year resident. Rather, his contract was not renewed, which would have advanced him to a second-year residency. The relevant inquiry, then, is whether the evidence shows that he was qualified, or not qualified, to advance to a second-year residency.

The affidavits of Elueze and MacClements, and the documents attached to those affidavits, showed that in the opinions of Elueze and the members of the clinical competency committee, Nawab had significant deficits in medical knowledge, patient care, and professionalism and that based on Nawab's poor performance in these areas, his contract was not renewed. Thus, Texas Health produced some evidence showing that Nawab was not qualified to advance to a second-year residency. It was incumbent on Nawab, then, to produce some evidence that he was qualified to advance to a second-year residency. Yet he never produced any evidence of his qualifications.[9]

Because the trial court was presented with evidence that Nawab was not qualified to advance to a second-year residency and no opposing evidence raising a fact question as to his

---

[9]For instance, the February 6 meeting summary indicates that Nawab might get full, marginal, or no credit for the academic year. Nawab produced no evidence that he received full credit for the year, which would have at least raised a fact question as to whether he was qualified to advance to a second-year residency.

qualifications, we find that it erred in denying the plea to the jurisdiction as to Nawab's claims based on race and national origin discrimination.[10] *See Garcia II*, 372 S.W.3d at 643. We sustain Texas Health's first point of error.

## B. Hostile Work Environment

In his original petition, Nawab also alleged he was subjected to a hostile work environment. To establish a prima facie case of hostile work environment based on race or national origin, Nawab was required to demonstrate that

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic, e.g. [race or national origin]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Bartosh*, 259 S.W.3d at 324 n.14 (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2443 (2013)). Only the first four elements are required when the alleged harassment is committed by the plaintiff's supervisor. *Id.* (citing *Celestine*, 266 F.3d at 354).

A hostile environment claim is only actionable if the work environment is both objectively and subjectively offensive, i.e., one that would be hostile or abusive to a reasonable person and that the plaintiff in fact perceived to be so. *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App.—Eastland 2005, pet. denied) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787

---

[10]In his brief, Nawab implies that he also asserted a discrimination claim based on his disparate treatment when compared to Indian residents. To the extent his original petition can be construed to also assert a claim for disparate treatment, we note that a prima facie case for disparate treatment also requires that the plaintiff produce some evidence that he was qualified for the position. *See Harris Cty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 196 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 323 (Tex. App.—Texarkana 2008, pet. denied).

(1998)). "A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

> Courts determine whether an environment is sufficiently abusive to be actionable by reviewing all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or it is a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.

*Fletcher*, 166 S.W.3d at 489 (citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998)). Further, "[i]ncidental or occasional [race or nationality]-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment. *Id.* (citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d at 269 n.3)).

In his brief, Nawab argues that he was constantly confronted with false statements, negative evaluations, and negativity. However, the record does not support these assertions. In his pleadings and affidavit, Nawab refers to one incident in which a doctor of Indian descent mocked his Pakistani accent, one instance in which another doctor of Indian descent asked where he was from and if he ate halal, and one instance in which a third doctor of Indian descent told him of an Indian village from which the Muslim residents were evicted by the Indian army. The first of these incidents could be claimed to have been based on race or nationality, and the other two could be liberally interpreted as being religious-based comments.

13

In its plea to the jurisdiction, Texas Health challenged the sufficiency of this one incident to establish a prima facie case of hostile work environment based on race or nationality.[11]  In response, Nawab's affidavit also complained of two doctors of Indian descent who gave him unfounded negative reviews, one of whom was also negative toward him the first time he worked with her, yelled at him and humiliated him, and made comments during rotation that were laced with contempt, disrespect, and ridicule.  Nawab did not provide any specifics of the comments and behavior of the doctors to enable us to determine whether the comments and behavior would be offensive to a reasonable person in a similar situation.

Also, in his petition, brief, and affidavit, Nawab appears to engage in the unsupported assumption that doctors of Indian descent are inherently discriminatory toward Pakistanis.  Even if we entertained that assumption, which we decline to do, there is still nothing in the allegations in this case to indicate that the reviews or the doctor's behavior and comments toward Nawab were based upon racial or national origin animus, as opposed to the doctors' perceptions that Nawab's medical knowledge, patient care, and performance were significantly below the standards expected of a first-year resident.

Further, Nawab argues in his brief that he was constantly confronted with false statements, negative evaluations, and negativity so that he could not focus on his job because he was worried about the false statements and poor evaluations, citing his affidavit as the evidence of these claims. However, Nawab made no such statements in his affidavit and produced no other evidence that

---

[11]*See supra* note 4.  Because Nawab did not appeal the dismissal of his religious discrimination claim, we only evaluate the sufficiency of his discrimination claims based on race or nationality.

the alleged harassment interfered with his work performance.

On this record, we find that Nawab did not establish a prima facie case of race- or nationality-based hostile work environment. Therefore, we find the trial court erred in denying Texas Health's plea to the jurisdiction on this claim. We sustain Texas Health's second point of error.

## C. Retaliation

Nawab also alleged that he was discharged as a result of lodging complaints about his treatment by the staff at Texas Health. The TCHRA prohibits employers from retaliating against an employee who engages in protected activities. TEX. LAB. CODE ANN. § 21.055. Protected activities include opposing a discriminatory practice, filing a charge, filing a complaint, and testifying or participating in an investigation, proceeding, or hearing. *Id.* To establish a prima facie case of retaliation, "a plaintiff must show that (1) he participated in protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action." *Brewer v. College of the Mainland*, 441 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

Texas Health submitted the affidavit of MacClements who attested that he had written a letter to Nawab in response to his request for a review of his non-reappointment. MacClements also stated that the Graduate Medical Education Committee reviewed the documentation and met with Nawab to receive his input. The July 17, 2013, letter from MacClements to Nawab reviews

15

the actions taken by Elueze and the clinical competency committee in regard to Nawab and reflects that the Graduate Medical Education Committee met with Nawab, at Nawab's request, to review his non-reappointment and to receive his input. Nowhere in the letter does it indicate that Nawab complained to MacClements or to the committee that he had been discriminated against because of his race or national origin. This supports a reasonable inference that Nawab had not complained to Texas Health of any discriminatory practice.

In his original petition, Nawab alleged,

The core faculty members and employees of [Texas Health] made offensive and derogatory comments during the time that he was employed there. Plaintiff complained about the way that he was being treated. After lodging these complaints, Plaintiff was faced with numerous false allegations regarding his competency. As a direct result of these complaints, Plaintiff was discharged from his position as a medical resident on June 30, 2013. His termination, the retaliation and the harassment were all on the basis of his race . . . and national origin.

In these allegations, Nawab provides no specifics regarding the content of the offensive and derogatory comments made by the faculty and employees of Texas Health, nor does he provide any specifics of the content of his complaint. In his affidavit, Nawab states, "When I wrote a long complaint against the core faculty member, . . . Vazza-Zied, I was given a letter stating that my performance possible nonrenewal of contract (sic) in February." Again, Nawab provided no specifics of the content of his complaint. In addition, Nawab produced no other evidence of the contents of his complaints to Texas Health.

Vague complaints of mistreatment, or of offensive and derogatory comments, which do not specifically import a person's race or national origin do not invoke protection under the TCHRA. *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.]

16

1998), *disapproved on other grounds by Glassman v. Goodfriend*, 347 S.W.3d 772 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc)); *see also, Martinez v. Daughters of Charity Health Servs.*, No. 03-05-00264-CV, 2006 WL 3453356, at *4–5 (Tex. App.—Austin Nov. 30, 2006, no pet.) (mem. op.); *Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010)[12] (decision under analogous provision of Title VII); *Cole v. Pearland Indep. Sch. Dist.*, No. 4:11-CV-00211, 2013 WL 4494423, at *10 (S.D. Tex. Mar. 21, 2013) (mem. op.) (same). Although no magic words are required, an employee's complaint to his employer, to be protected, "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown*, 406 Fed. Appx. at 840 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348–49 (5th Cir. 2007)). In this case, Nawab produced no evidence that his complaints to Texas Health would have alerted it that he was complaining of discrimination based on race or national origin. Further, the bare allegation in his original petition that the retaliation was based on race or national origin discrimination will not survive a plea to the jurisdiction challenging the existence of jurisdictional facts. *See Garcia II*, 372 S.W.3d at 638; *Lueck*, 290 S.W.3d at 884.

On this record, we find that Nawab did not establish a prima facie case of retaliation. Therefore, we find that the trial court erred in denying Texas Health's plea to the jurisdiction on this claim. We sustain Texas Health's third point of error.[13]

---

[12]The purpose of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964. TEX. LAB. CODE ANN. § 21.001(1) (West 2015); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Thus, "analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." *Quantum*, 47 S.W.3d at 476.

[13]Since we have found that Nawab failed to establish a prima facie case on any of his TCHRA claims, we need not address Texas Health's other arguments supporting its points of error.

17

**IV.    Conclusion**

For all of the foregoing reasons, we find that the trial court erred in denying Texas Health's plea to the jurisdiction.    Accordingly, we reverse the judgment of the trial court and render judgment dismissing Nawab's suit.

Ralph K. Burgess
Justice

Date Submitted:    March 16, 2017
Date Decided:    April 21, 2017

18