

# NUMBER 13-23-00231-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAYMONDVILLE INDEPENDENT
SCHOOL DISTRICT,                                                      Appellant,

v.

RUBEN RUIZ,                                                          Appellee.

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF WILLACY COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice West**

Appellee Ruben Ruiz filed a lawsuit against appellant Raymondville Independent School District (Raymondville ISD) under § 554.002(a) of the Texas Government Code (the Texas Whistleblower Act). *See* TEX. GOV'T CODE ANN. § 554.002. The jury entered a

verdict in favor of Ruiz. By eight points of error, Raymondville ISD challenges the jury's verdict and damages. We reverse and render.

## I.   BACKGROUND

In December 2013, Raymondville ISD hired Ruiz as a truancy officer in its police department. The department employs licensed police officers, security officers, and truancy officers, the latter of which oversee student attendance. Shortly after Ruiz was hired as a truancy officer, he worked other jobs for the district, including security, "parking detail," events DJ, and school bus driver.

On May 17, 2018, Ruiz sent a letter to his supervisor, Chief Lauro Gutierrez, the Chief of Police for Raymondville ISD. The letter contained complaints about Ruiz's coworker and occasional supervisor, Maribel Herrera, a licensed senior police officer in the department. The letter began:

> I am writing this letter to you, as my immediate supervisor, to file a complaint on my coworker [Herrera]. I would like to grieve to you about the work environment she is creating in which I feel very uncomfortable with and even sense a bit of hostility.

The letter then described four discrete incidents:

- In May 2017, Herrera "told several officers to take [a] picture of Security Officer [Jose David] Amaya #711 doing anything wrong so she could get him fired." Officer Christian Vargas then took a picture of Amaya "on his cell phone" while working. Ruiz told Vargas "that we should not be doing that to each other as coworkers" and "that if we see another coworker doing something wrong, we should address it with them immediately to prevent further episodes or anyone getting in trouble." He alleged that after this Herrera "became upset with [him] and began retaliating against [him] on several occasions."

- In September 2017, Ruiz was "assigned to do parking detail." Ruiz "figured out a way to do the procedure" to "make it easier for everybody." He obtained permission from Herrera because Chief

2

Gutierrez was absent, and she was acting supervisor when he was gone. Herrera later told Chief Gutierrez that Ruiz was "doing [his] own thing for parking and doing whatever [he] wanted," which caused Chief Gutierrez to "bec[o]me upset with" Ruiz.

- In April 2018, two officers told Ruiz that Herrera "approached them and told them 'I don't understand why [Ruiz] has a [p]olice [r]adio & [m]aster [k]eys, [w]ho does he think he is? Doesn't he realize he is [a] nobody in this department.'" Ruiz explained in the letter that Chief Gutierrez had given him the keys and the radio to carry out his assigned duties.

- On May 17, 2018, the same day Ruiz wrote the letter, a teacher notified him that a student was singing a threatening song about students and staff. Herrera "overheard the conversation" and commented to another officer: "Why are staff sharing this information with him[?] He is [a] nobody in this department." Later that day, Ruiz "[i]nformed dispatch on the radio that [he] would be out to lunch," and Herrera commented again, "Who does he think he is?"

The letter stated that Herrera "continues to badger [him] and harass [him]" and "look for any reason to get [him] in trouble." The letter concluded that Ruiz could "no longer tolerate" or "allow" the "hostile work environment" created by Herrera.[1] He quoted the employee handbook: "All employees are expected to work together in a cooperative spirit to serve the best interest of the district and to be courteous to students, one another and the public."

On May 25, 2018, after an investigation into Ruiz's complaint revealed possible misconduct by him, Ruiz was terminated from his employment with Raymondville ISD. Ruiz subsequently filed a lawsuit against Raymondville ISD under the Texas

---

[1] There were no allegations in Ruiz's letter that Herrera's conduct was discriminatory, and Ruiz has never explicitly alleged a hostile work environment claim. *See Univ. of Tex. Health Sci. Ctr. at Tyler v. Nawab*, 528 S.W.3d 631, 641 (Tex. App.—Texarkana 2017, pet. denied) ("A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." (quotation omitted)).

Whistleblower Act. *See id.* § 554.002(a).[2] On June 8, 2018, Ruiz's counsel sent a "Level

II Whistleblower Complaint" to Stetson Roane, the superintendent of Raymondville ISD.

The complaint included a Whistleblower grievance from Ruiz. It stated in relevant part:

> On May 17, 2018, I submitted a complaint to Chief La[ur]o Gutierrez for investigation of the conduct of Officer Maribel Herrera. The report . . . contained information for Chief Gutierrez to investigate Officer Maribel Herrera regarding her obstruction and interference that was official oppression against me . . . .
>
> On May 17, 2018, I was investigating a potential threat regarding a student who . . . was singing a song regarding school shootings that was alarming employees and other students on campus. Officer Herrera impeded my investigation whereby she stated to Officer Villarreal, "Why are the staff sharing this information with him[?] He is a nobody in this department."
>
> I was conducting my investigation . . . and Officer Herrera's remarks and abuse of her authority by undermining my ability to protect the students and staff from perceived and real threats was oppressive and was reported in my written complaint hand delivered to the Chief.

At trial, Ruiz explained that the purpose of the May letter was to voice his

complaints about Officer Herrera "belittling" him and his concern that she was committing

"official oppression":

> [Ruiz's Counsel]: Now, when an officer uses their public position for their personal, private purposes, what do you understand that to be?
>
> [Ruiz]: For me, that is considered official oppression. She's using her badge, her uniform, or authority against me.
>
> Q. And who else?
>
> A. And Amaya.
>
> Q. For what purpose?

---

[2] Raymondville ISD filed a plea to the jurisdiction in response to Ruiz's petition, which the trial court denied, and this Court affirmed. *Raymondville Indep. Sch. Dist. v. Ruiz*, No. 13-19-00597-CV, 2021 WL 822699 (Tex. App.—Corpus Christi–Edinburg Mar. 4, 2021, pet. denied) (mem. op.).

4

A.          To mistreat us. To mistreat them. To use their authority over us.

            . . . .

Q:          What did you, in good faith, feel [Herrera] was [doing]?

A:          In good faith, I thought it was official oppression. She was using her badge and uniform over us and belittling us.

Raymondville ISD maintained that Ruiz was terminated because of a history of disobeying orders from Herrera, making another female employee uncomfortable, and generally doing tasks that were not assigned to him. Evidence alleged that Ruiz had brought a handgun onto school property, which had not been authorized by the school district and violated school policy. Chief Gutierrez testified that he recommended Ruiz's termination because of "insubordination," "gender discrimination," and "mental anguish." He explained that he "recognized . . . red flags within the department that was causing stress amongst the women" employed by the department.

The jury returned a verdict in favor of Ruiz and awarded him $212,000 in damages. This appeal ensued.

## II.    DISCUSSION

By its first issue, Raymondville ISD argues that the trial court erred by failing to dismiss Ruiz's Whistleblower Act claim for want of jurisdiction. It argues that Ruiz failed to prove that he had a good-faith belief that Herrera's actions, as reported, were a violation of law when he submitted his May letter to Chief Gutierrez, and thus, the trial court lacked subject-matter jurisdiction over his claims.

5

**A.     Standard of Review & Applicable Law**

Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Univ. of Houston v. Barth*, 403 S.W.3d 851, 854 (Tex. 2013). A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Subject-matter jurisdiction cannot be waived and can be raised at any time, even for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). If a plaintiff fails to prove any element of their claim, we must dismiss the case for want of jurisdiction. *See Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 617 (Tex. 2014) (concluding there was no evidence that the plaintiff reported the alleged violations to an appropriate law-enforcement authority in good faith and dismissing plaintiff's claims for lack of subject-matter jurisdiction); *Barth*, 403 S.W.3d at 853 (concluding there was no evidence of two of the elements in plaintiff's Whistleblower Act claim and dismissing the case for lack of subject-matter jurisdiction).

The Texas Whistleblower Act prohibits a state or local government entity from taking adverse action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). An appropriate law enforcement authority under the Act is a state or local governmental entity or federal government "that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b).

"Good faith" under § 554.002(a) "means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in

6

light of the employee's training and experience." *City of Donna v. Ramirez*, 548 S.W.3d 26, 37 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (quoting *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). This is both an objective and subjective standard. *Id.* "The first, or subjective, element embodies the concept of 'honesty in fact' and ensures an employee seeking a remedy under the Act must have believed she was reporting an actual violation of the law." *City of South Houston v. Rodriguez*, 425 S.W.3d 629, 635 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "The second, or objective, element ensures that even if the reporting employee honestly believed the reported conduct was a violation of law, she receives protection under the Act only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law." *Id.*; *see Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002) (providing that objective good faith is met when the "employee's belief [i]s reasonable in light of the employee's training and experience").

"To maintain an action under the Act, an employee need not prove an actual violation of law, but there must be some law prohibiting the conduct of which the employee complains." *City of South Houston*, 425 S.W.3d at 635; *City of Donna*, 548 S.W.3d at 37; *Llanes v. Corpus Christi Indep. Sch. Dis.*, 64 S.W.3d 638, 642–43 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied). Ruiz testified he believed Herrera's actions constituted official oppression. *See* TEX. PENAL CODE ANN. § 39.03(a)(1). A person commits the offense of official oppression if he is a "public servant acting under the color of his office or employment" and "intentionally subjects another to mistreatment . . . that

7

he knows is unlawful." *Id.*[3] "For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity." *Id.* § 39.03(b).

"Mistreatment" is not defined by the statute. *See id.* However, the statute only prohibits "unlawful" mistreatment, which is defined as "criminal or tortious" mistreatment. *State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996) (determining that "unlawful" mistreatment under the official oppression statute means conduct that is "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege" (quoting TEX. PENAL CODE ANN. § 1.07(a)(48)).

## B.    Law of the Case Doctrine

We first address Ruiz's contention that Raymondville ISD's jurisdictional argument fails because this Court already determined that he "possessed sufficient evidence to establish good faith" when we affirmed the trial court's denial of Raymondville ISD's plea to the jurisdiction. *See Raymondville Indep. Sch. Dist. v. Ruiz*, No. 13-19-00597-CV, 2021 WL 822699, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 4, 2021, pet. denied) (mem. op.). Ruiz argues that "the law of the case" doctrine requires us to follow the holding in that opinion because "questions decided in a prior appeal continue to govern the litigation throughout its subsequent stages."

---

[3] A public servant may also commit official oppression if he intentionally "denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful," or "subjects another to sexual harassment." TEX. PENAL CODE ANN. § 39.03(a)(2), (3). Ruiz does not allege that Herrera violated the statute under either of these alternative theories of official oppression. The record is also clear that Ruiz believed he suffered "mistreatment" under § 39.03(a)(1). *Id.* § 39.03(a)(1).

8

The law of the case doctrine "provides that a decision of a court of last resort on a question of law will govern a case throughout its subsequent stages." *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). "Application of this doctrine is flexible, left to the discretion of the court, and determined according to the particular circumstances of the case." *Shiloh Treatment Ctr., Inc. v. Ward*, 608 S.W.3d 337, 341 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). The doctrine "does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved on the first trial." *Hudson*, 711 S.W.2d at 630; *see Bierscheid v. JPMorgan Chase Bank*, 606 S.W.3d 493, 540 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *see also Univ. of Tex. Sw. Med. Ctr. v. Munoz*, No. 05-14-01152-CV, 2016 WL 1179407, at *3 (Tex. App.— Dallas Mar. 22, 2016, pet. denied) (mem. op.) ("If the record in one appeal on a plea to the jurisdiction differs from the record on a second appeal following a trial, we review the evidence challenging the existence of jurisdictional facts.").

After due consideration, we conclude that application of this doctrine is not appropriate in this case. First, in *Ruiz*, we addressed the propriety of the trial court's ruling on a plea to the jurisdiction basing our decision on the limited evidence adduced at that time. *See* 2021 WL 822699, at *3. We did not have the benefit of the additional evidence introduced at the trial of this matter, which included Ruiz's testimony regarding official oppression. *See Hudson*, 711 S.W.2d at 630; *see, e.g.*, *Rodgers v. Comm'n for Law. Discipline*, 151 S.W.3d 602, 609 (Tex. App.—Fort Worth 2004, pet. denied) (providing that the law of case doctrine does not apply when evidence differs "at two different stages of litigation and may involve more fully developed facts at either stage").

9

Second, the law of the case will not necessarily apply when the applicable law has subsequently been modified or clarified by the Texas Supreme Court. *See, e.g.*, *City of Dallas v. Jones*, 331 S.W.3d 781, 785 (Tex. App.—Dallas 2010, pet. dism'd); *McCrea v. Cubilla Condo. Corp., N.V.*, 769 S.W.2d 261, 263 (Tex. App.—Houston [1st Dist.] 1988, writ denied). After we decided *Ruiz*, the supreme court issued two opinions that affect our analysis of the matter at hand: *Texas Health & Human Services Commission v. Pope*, 674 S.W.3d 273 (Tex. 2023), and *City of Fort Worth v. Pridgen*, 653 S.W.3d 176 (Tex. 2022).

In *Pridgen*, the Court held that the whistleblowers—two senior law enforcement officers—failed to make a qualifying report under the Act because their "reports did not aim to expose, corroborate, or otherwise provide information pertinent to identifying or investigating governmental illegality," and "merely voiced opinions and encouraged . . . a particular legal designation." *See Pridgen*, 653 S.W.3d at 187–88. Relevant here, the Court concluded that "'reporting' under the Act requires, at a minimum, provision of information regarding illegal conduct," and the officers' report did not "suffice." *Id.* at 188.

In *Pope*, the Court held that some of the whistleblowers' reports failed to "satisfy the objective prong of the 'good faith' standard" because the reports did not identify a violation of law, and the whistleblowers should have known there was no violation of law given their "training and experience." *See* 674 S.W.3d at 278, 283–84, 288–89 ("Simply put, no 'reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law.'" (quoting *Hart*, 917 S.W.2d at 785)). Additionally, the Court opined that "the conduct must be 'reported,' not implied or insinuated." *Id.* at 283. These two cases clarify that to support a finding of good faith, a

10

significant factor is whether the whistleblower actually identifies potential illegal conduct in their report. *See id.* at 283–84; *Pridgen*, 653 S.W.3d at 187–88. We proceed with our review accordingly.

**C.      Good-Faith Belief**

Raymondville ISD argues that Ruiz failed to prove that he had either a subjective or objective good-faith belief that Herrera violated the law. *See City of South Houston*, 425 S.W.3d at 635. It first contends that nothing about Herrera's conduct was inherently illegal, and there was "no evidence" that her conduct constituted "unlawful" mistreatment under the official oppression statute. *See* TEX. PENAL CODE ANN. § 39.03(a)(1). It then argues that Ruiz failed to prove that he had a subjective good-faith belief because his letter to Chief Gutierrez was merely "a mundane workplace grievance"; he "displayed no knowledge of" the elements of official oppression at trial; and he conceded "that he did not believe Officer Herrera was subject to arrest." *See City of South Houston*, 425 S.W.3d at 635. It lastly argues that Ruiz failed to prove he had an objective good-faith belief because no reasonably prudent person in his position—someone with experience adjacent to law enforcement—would have believed that Herrera's conduct was a violation of law. *See id.*

In this case, Ruiz reported four incidents, two of which occurred in 2017 and two of which occurred in 2018. In 2017, Herrera (1) instructed fellow officers to take pictures of Amaya engaged in any wrongdoing allegedly to get him fired and (2) told Chief Gutierrez that Ruiz was "doing [his] own thing for parking and doing whatever [he] wanted," which caused Chief Gutierrez to "bec[o]me upset with" Ruiz. Then, on two separate occasions in 2018, Herrera commented to coworkers that Ruiz "was a nobody

11

in the department." In Ruiz's June Whistleblower complaint, he stated that he believed these actions constituted official oppression. At trial, Ruiz maintained that Herrera mistreated him by "abusing her position" as a police officer or using "her badge over [him]," and he "in good faith" believed that Herrera's "mistreatment" of him constituted official oppression.

Ruiz relied on his own expert opinion and legal conclusions, to prove Herrera committed official oppression, without discussing the necessary elements of official oppression:

[Counsel]: [W]hen you wrote [the May] letter [to Chief Gutierrez] . . . did you expect him to arrest [Herrera] for that?

[Ruiz]: Using her badge and authority, yes, it's official oppression. I felt that she was using her badge, her uniform, to degrade me and make me feel uncomfortable, to belittle me and use her authority over me by calling me a nobody and that I shouldn't have the items that I had.

Q. You think that's a reasonable conclusion?

A. In my expert opinion, yes, sir.

Q. So if [Chief Gutierrez] yesterday [when he testified] . . . told me, hey, I don't think you're anybody in this district or anybody in this courtroom, do you believe that he's officially oppressing me and he should be arrested for that?

A. If he's using his badge and has his badge and uniform and he's using his authority over you, that would be the law, correct?

Q. I'm asking just how you feel, sir. Do you feel that's reasonable?

A. Yes, sir, official oppression.

Q. If he says that, it's reasonable that I should go to the police authority and have him prosecuted?

A. If he's done it, yes, sir.

12

Ruiz failed to explain how Herrera's conduct was unlawful or "criminal or tortious." *See Edmond*, 933 S.W.2d at 127. Instructing coworkers to take pictures of Amaya engaged in any wrongdoing and telling Chief Gutierrez that Ruiz was not following "parking detail" procedure is not inherently criminal or tortious. Even if Herrera acted with the intention to get Amaya or Ruiz fired, nothing was presented to show how this was criminal or tortious.

Likewise, describing someone as "a nobody in this department" is also not inherently unlawful or "criminal or tortious." Ruiz contended in his June Whistleblower complaint that Herrera's remarks "impeded [his] investigation" into a potential school shooting threat and "undermin[ed] [his] ability to protect the students and staff from perceived and real threats." However, nothing in the record explains or suggests how Herrera's comments to coworkers impeded his investigation into a potential shooting threat, or undermined Ruiz's ability to protect students and staff. Further, Ruiz consistently testified that Herrera's comments were "belittling," illustrating that his true complaint was that the conduct was offensive, not that it actually interfered, unlawfully or otherwise, with his ability to protect students and staff.[4]

Additionally, pursuant to *Pope*, the conduct must be 'reported,' not implied or insinuated. *See* 674 S.W.3d at 278. Ruiz's initial report did not report criminal conduct to the school district, and such cannot be implied or insinuated to support a cause of action under the Whistleblower Act. The report failed to "expose, corroborate, or otherwise

---

[4] Additionally, § 39.03(a)(1) requires that the violator know that the mistreatment is unlawful. *See* TEX. PENAL CODE ANN. § 39.03(a)(1); *Edmond*, 933 S.W.2d at 127 (providing that a defendant charged under § 39.03(a)(1) "must mistreat another and must also know that his conduct is criminal or tortious"). Ruiz failed to present any evidence of how Herrera knew or should have known that her conduct was criminal or tortious.

provide information pertinent to identifying or investigating governmental illegality" because it was not obvious or apparent how Herrera's conduct was illegal. *See Pridgen*, 653 S.W.3d at 187–88. Thus, Ruiz failed to provide evidence, other than his "unsupported opinions or legal conclusions," that Herrera committed official oppression. *See Pridgen*, 653 S.W.3d at 187–88 (concluding that "[c]ommunicating unsupported opinions or legal conclusions is insufficient" to establish a qualifying report under the Whistleblower Act).

Even if we assume that Ruiz had a subjective good faith belief that Herrera committed official oppression, Ruiz still had the burden to prove that his belief was objective—i.e., whether a reasonably prudent employee in similar circumstances would have believed the facts as reported were a violation of law. *See Needham*, 82 S.W.3d at 321; *City of South Houston*, 425 S.W.3d at 635. "[A] workable, fair standard to determine if a report was made in 'good faith' must take into account differences in training and experience." *Hart*, 917 S.W.2d at 785. For example, "a peace officer has more experience than those in other professions in deciding whether an act is a violation of law." *Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex. 1996) (citing *Hart*, 917 S.W.2d at 785). "Thus, the reasonableness of a peace officer's belief that a law has been violated will be examined more closely than will the belief of one in another, non-law enforcement profession." *Id.*

Ruiz has never been employed as a police officer; however, Ruiz has similar training and experience. Though Ruiz was hired as a truancy officer with the Raymondville ISD police department, he often worked security, and testimony established that he worked closely with the department's police officers during his five years there. For example, he testified that though he did not carry a handgun in his role, he re-certified

14

his handgun training with the department's police officers every two years. And as he stated in his letters and at trial, he assisted with an investigation into a potential school shooting threat. Prior to his employment with the department, Ruiz worked for three and a half years as a licensed security officer at a state prison, spent twelve years working as a security officer at a hospital, and had years of experience as a volunteer firefighter. Ruiz also referred to himself as an "expert" in rendering his legal opinions in the trial court.

With his training and experience, Ruiz should have been able to distinguish that Herrera's conduct was not unlawful, and thus, did not constitute official oppression or a violation of law. *See Grabowski*, 922 S.W.2d at 956 (concluding that officer's belief "that Constable Moore violated the law fails to satisfy the second prong because his belief was not reasonable in light of his experience as a peace officer"); *Hennsley v. Stevens*, 613 S.W.3d 296, 304 (Tex. App.—Amarillo 2020, no pet.) (dismissing Whistleblower complaint because the reported conduct did not violate the criminal statutes plaintiff alleged and as "a law enforcement officer with more than fifteen years of training and experience" he should have known "that the matters alleged here do not constitute violations of law"); *Donlevy v. City of The Colony*, 8 S.W.3d 754, 757–58 (Tex. App.—Fort Worth 1999, no pet.) (holding that plaintiff failed to show objective good-faith belief that defendant had violated a law because she "openly admitted" that she did not know what law she believed had been violated, and "no reasonably prudent police officer would have believed" that the law had been violated).

Ruiz argues that it is irrelevant whether Herrera actually committed official oppression because "the whistleblower is protected if he merely, in good faith, reports a perceived violation of the law; **the reported conduct need not actually constitute a**

**criminal or other legal violation**." We agree that Ruiz need not prove that Herrera actually broke the law to sustain a Whistleblower complaint. *See Tex. Dept. of Crim. Just. v. McElyea*, 239 S.W.3d 842, 850 ("[W]hen an employee believes and reports in good faith that a violation has occurred, but is wrong about the legal effect of the facts, he is nevertheless protected by the whistleblower statute."). But, according to *Pope* and *Pridgen*, "the Act requires, at a minimum, provision of information regarding illegal conduct." *See Pridgen*, 653 S.W.3d at 188; *Pope*, 674 S.W.3d at 282.

In light of *Pope* and *Pridgen*, failing to show how Herrera's conduct could have violated *any* law, weighs heavily against an objective good faith finding. *See Pope*, 674 S.W.3d at 288 (holding that the whistleblowers could not "satisfy the objective prong of the 'good faith' standard for evaluating Whistleblower Act claims" because their report failed to identify a violation of law); *Pridgen*, 653 S.W.3d at 187–88; *see also Grabowski*, 922 S.W.2d at 956 (holding that the officer failed to prove that he had an objective good-faith belief that the constable violated the law because "he presented no evidence of a law he believed [the constable] violated," and he "openly admitted that he could think of no traffic law violated"); *City of South Houston*, 425 S.W.3d at 635–36 (dismissing Whistleblower complaint in part because plaintiff failed to explain how the mayor's actions were rendered illegal by the criminal statute she cited in her petition).

We hold that Ruiz failed to prove that a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law, and his report did not provide sufficient information to identify any law that Herrera could have violated. *See Pope*, 674 S.W.3d at 288; *Pridgen*, 653 S.W.3d at 187–88; *Grabowski*, 922

16

S.W.2d at 956; *Hennsley*, 613 S.W.3d at 304; *City of South Houston*, 425 S.W.3d at 635–36; *Donlevy*, 8 S.W.3d at 757–58; *see also Llanes*, 64 S.W.3d at 642–43.

We sustain Raymondville ISD's first issue. Because this issue is dispositive, we need not address its remaining arguments. *See* TEX. R. APP. P. 47.1.

### III.    CONCLUSION

We reverse the trial court's judgment and render a dismissal based on lack of subject-matter jurisdiction of Ruiz's suit against Raymondville ISD.

JON WEST
Justice

Delivered and filed on the
10th day of April, 2025.